585 N.E.2d 700 (1992)
Stephen LAUDIG and Louis J. Mahern, Jr., Appellants-Plaintiffs,
v.
MARION COUNTY BOARD OF VOTERS REGISTRATION, Janet E. Richart, in Her Official Capacity As Republican Board Member, and Mary Agnes Bussing, in Her Official Capacity As Democratic Board Member, Appellees-Defendants.
No. 73A05-9104-CV-100.
Court of Appeals of Indiana, Fifth District.
February 6, 1992.
*702 Stephen Laudig, pro se, Indianapolis and for appellant-plaintiff.
Margo Barber, City-County Legal Div., Indianapolis, for appellees-defendants.
SHARPNACK, Judge.
Stephen Laudig and Louis J. Mahern, Jr. appeal from a summary judgment in favor of the Marion County Board of Voters Registration, et al., in an action for declaratory judgment, preliminary injunction and permanent injunction. We affirm.
On May 9, 1990, Stephen Laudig filed a complaint in Marion Superior Court for the purpose of obtaining from the Marion County Board of Voters Registration (hereinafter referred to as the "Board") a computer tape copy of the list of names, addresses and other information about registered voters in Marion County. On May 11, Laudig amended his complaint and added Louis Mahern, Jr. as a plaintiff.
On May 24, Laudig and Mahern, (hereinafter referred to as "Laudig"), filed a motion for preliminary injunction. On June 29, the Board filed an answer to Laudig's amended complaint. On July 3, Laudig filed a motion for summary judgment, supported by a memorandum. On July 16, the Board responded to the summary judgment motion and filed a cross motion for summary judgment. On July 27, Laudig filed a reply to the Board's cross motion for summary judgment. The parties' reply included two exhibits, one of which was the affidavit of Bradford Mason.
On July 30, the trial court heard arguments on Laudig's request for a preliminary injunction and both parties' motions for summary judgment. On September 17, the court, after making findings of fact[1] and conclusions of law, denied Laudig's motion for summary judgment and granted the Board's motion for summary judgment. According to the record, on that same day the court additionally granted the Board's motion to strike exhibit B from Laudig's *703 reply to the Board's cross motion for summary judgment.[2]
On October 10, Laudig filed a motion to correct error, supported by a memorandum, wherein he alleged newly discovered, material evidence. On October 19, Laudig filed a supplemental memorandum and submission in support of his motion to correct error. On October 24, the Board filed both a response to the Laudig's motion to correct error and a motion to strike the affidavits submitted by Laudig in support of his motion to correct error and his supplemental memorandum in support of his motion to correct error.
On November 1, the Board filed both a motion to quash Laudig's intended deposition of Thomas Moynahan and a motion for a protective order protecting the Board from any further discovery in the matter. That same day, the court issued such an order.
The trial court heard arguments on the motions to correct error and to strike affidavits on December 12. On January 8, 1991, the court granted the Board's motion to strike the affidavits of Mason attached to Laudig's motion to correct error, denied Laudig's motion for leave to take deposition, and overruled Laudig's motion to correct error, finding that Laudig failed to demonstrate newly discovered material evidence.
Laudig raises several issues for review, which we restate as:
(1) Was there an issue of material fact as to whether or not the Marion County Board of Voter Registration had acted arbitrarily or capriciously by denying Laudig's request for a copy of the computer tape containing the list of registered voters in Marion County?
(2) Did the trial court abuse its discretion by granting the Board's motion to strike the affidavit of Bradford Mason which was attached to Laudig's motion for summary judgment?
(3) Did the trial court abuse its discretion by granting the Board's motion to strike the affidavits of Bradford Mason which was attached to Laudig's motion to correct error and to Laudig's supplemental memorandum in support of his motion to correct error?
(4) Did the trial court abuse its discretion by quashing the deposition of Thomas Moynahan and issuing an order protecting the Board from further discovery?
(5) Did the trial court err by denying Laudig's motion to correct error?
The facts relevant to this appeal are as follows. On November 7, 1989, Laudig submitted a written request to the Marion County Board of Voter Registration for a copy of a computer tape containing a list of the registered voters within Marion County. Pursuant to I.C. § 3-7-2-22, the Board bears the responsibility of maintaining such a record. In addition to the information required by statute, (i.e., the voter's full name, address and assigned identification number), the Board's list also includes the voter's voting history and what party ballot, if any, the voter took in primary elections.
On November 15, the Board refused, in writing, to provide Laudig with a copy of the computer tape, which both parties agree is a public record. Instead, the Board advised Laudig that he could inspect and make notes of the list anytime during regular business hours.
Pursuant to I.C. § 3-7-7-10, the Board provides copies of its list of registered voters to the precinct inspectors for use at the polls on election day and to the chairpersons of the major political parties of the county. The Board apparently provides the list in written form to the inspectors and in the form of a computer tape to the party chairpersons.
When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court: we must consider all of the pleadings, affidavits, depositions, admissions, answers to interrogatories, and, where applicable, testimony in the light most favorable to the nonmoving party in order to determine whether a genuine issue of material fact *704 remains for resolution by the trier of fact. Ayres v. Indiana Heights Volunteer Fire Dept., Inc. (1986), Ind., 493 N.E.2d 1229, 1234. A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party, and we must reverse the entry of summary judgment. Woodward Insurance, Inc. v. White (1982), Ind., 437 N.E.2d 59, 62. However, if no genuine issue of material fact exists, and if the moving party is entitled to judgment as a matter of law, we must affirm the entry of summary judgment. Id. The moving party bears the burden of showing the absence of a factual issue and that he is entitled to judgment as a matter of law. Norman v. Turkey Run Community School Corp. (1980), 274 Ind. 310, 312, 411 N.E.2d 614, 615.
The fact that both parties requested summary judgment does not alter our standard of review. Instead, we must separately consider each motion to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Fisher v. Kaylor (1969), 145 Ind. App. 148, 250 N.E.2d 19.
We must first decide if there is an issue of material fact as to whether or not the Marion County Board of Voter Registration acted arbitrarily or capriciously by denying Laudig's request for a copy of the computer tape containing the list of registered voters in Marion County.
The statutes applicable to this issue include those statutes concerning registration officers, I.C. § 3-7-2-1 et seq., and those concerning access to public records, I.C. § 5-14-3-1 et seq. The relevant statutes, in pertinent part, are as follows:
Registration Officers:
I.C. § 3-7-2-2:
In each county having a population of one hundred twenty-five thousand (125,000) or more, a board of registration is established. The board shall supervise the registration of voters of the county.
I.C. § 3-7-2-22:
Each board of registration has custody of all registration facilities, equipment, supplies, forms, records (including the permanent records of registered voters of the county), registration affidavits, and other property used in connection with the registration of voters in the county.
I.C. § 3-7-2-25:
The circuit court clerk or board of registration may keep records by use of electronic data processing equipment and may enter into contracts for this purpose.
I.C. § 3-7-7-9:
Not later than ten (10) days before the election at which the registration books are to be used, the circuit court clerk or board of registration shall prepare certified copies of the list of registered voters for each precinct in the county. The lists must contain the full name, address, and assigned identification number of each registered voter.
I.C. § 3-7-7-10:
Two (2) copies of the list required by section 9 of this chapter shall be furnished to the inspector of the precinct for use at the polls on election day, and one (1) copy of the list shall be furnished to each of the county chairmen of the major political parties of the county as soon as the lists are prepared. Additional copies of the registration lists shall be kept open to public inspection at the office of the circuit court clerk or board of registration as soon as they are completed.
Access to Public Records:
I.C. § 5-14-3-1:
A fundamental philosophy of the American constitutional form of representative government is that government is the servant of the people and not their master. Accordingly, it is the public policy of the state that all persons are entitled to full and complete *705 information regarding the affairs of government and the official acts of those who represent them as public officials and employees. This chapter shall be liberally construed to implement this policy and place the burden of proof for the nondisclosure of a public record on the public agency that would deny access to the record and not on the person seeking to inspect and copy the record.
I.C. § 5-14-3-2:
"Copy" includes transcribing by handwriting, photocopying, xerography, duplicating machine, and reproducing by any other means.
"Inspect" includes the right to manually transcribe and make notes, abstracts, or memoranda and, in the case of tape recordings or other aural public records, to listen and manually transcribe or make notes, abstracts, or other memoranda from them.
I.C. § 5-14-3-3:
(a) Any person may inspect and copy the public records of any public agency during the regular business hours of the agency, except as provided in section 4 of this chapter.
* * * * * *
(b) A public agency may not deny or interfere with the exercise of the right stated in subsection (a). The public agency shall either:
(1) provide the requested copies to the person making the request; or
(2) allow the person to make copies:
(A) on the agency's equipment; or
(B) on his own equipment.
(c) Notwithstanding subsections (a) and (b), a public agency may or may not, in accordance with a nondiscriminatory uniform policy of the agency, permit a person to duplicate or obtain a duplicate copy of a computer tape, computer disc, microfilm, or other similar or analogous record system that contains information owned by or entrusted to the agency.
I.C. § 5-14-3-4(c):
Notwithstanding section 3 of this chapter, a public agency is not required to create or provide copies of lists of names and addresses, unless the public agency is required to publish such lists and disseminate them to the public pursuant to statute. However, if a public agency has created a list of names and addresses, it must permit a person to inspect and make memoranda abstracts from the lists unless access to the lists is prohibited by law.
I.C. § 5-14-3-9:
(d) A person who has been denied the right to inspect or copy a public record by a public agency may file an action in the circuit or superior court of the county in which the denial occurred to compel the public agency to permit the person to inspect and copy the public record.
(e) The court shall determine the matter de novo, with the burden of proof on the public agency to sustain its denial.
As directed by I.C. § 3-7-7-9, the Marion County Board of Voters Registration maintains a list of registered voters within Marion county. Neither party disputes that this list is a public record and that access to the list is governed by 5-14-3-1 et seq. The Board has the discretion, pursuant to I.C. § 3-7-2-25, to keep this list electronically. As directed by I.C. § 3-7-7-10 and I.C. § 5-14-3-3, the Board furnishes both the precinct inspectors and the major political party chairpersons with copies of the voter registration list and provides access to the list for public inspection during the agency's regular business hours.
To the extent that the voter registration list maintained by the Board is a "list of names and addresses" within the meaning of I.C. § 5-14-3-4(c), the Board is not required to create or provide a copy of it to Laudig unless the Board is "required to publish such [list] and disseminate [it] to the public pursuant to statute." However, because access to the list is not prohibited by law, the Board must permit Laudig, as a member of the general public, to inspect and to make memoranda abstracts therefrom. The record indicates that the Board *706 did not deny Laudig access to the list for purposes of inspecting and making abstracts; the Board simply declined to provide Laudig with a copy of the computer tape containing the list.
Laudig argues that he is entitled to a copy of the computer tape because the Board in fact publishes and disseminates the information at issue when it provides the public with access to the material and when it provides precinct inspectors and county chairpersons with a list of the material. We disagree.
Black's Law Dictionary defines "publish" in relevant part as: "To make public; to circulate; to make known to people in general. To issue; to put into circulation." Black's Law Dictionary 1233 (6th ed. 1990). The American Heritage Dictionary defines "disseminate" in relevant part as: "To scatter widely ...; distribute; disperse... . To spread abroad; promulgate widely." The American Heritage Dictionary of the English Language 381 (1981 edition). Applying these definitions, we do not agree with Laudig's assertion that allowing the public to have access to the registration list and providing precinct inspectors and county chairpersons with that information, pursuant to statutory mandates, equates with "publishing and disseminating" the material to the public.
In addition, I.C. § 5-14-3-4(c) states that, before the Board is required to create or provide copies of the list under the access to public records provision, the Board must be required by statute to publish the voter registration list and disseminate it to the public. Laudig has provided us with no statute that requires the Board to publish and disseminate the voter registration list. The only statute addressing the subject is I.C. § 3-7-7-10, which states that, after the Board has provided copies of the list to precinct inspectors and county chairpersons, the Board must keep additional copies "open to public inspection" at either the Board's office or the office of the circuit court.
We hold that, because the Board is not required by statute to publish and disseminate to the public the voter registration list, the Board is not required to create or provide Laudig with a copy of the computer tape containing the list.
To the extent that I.C. § 5-14-3-3(c) may be applicable because the item Laudig sought was a computer tape copy of the voter registration list, the Board was not required to provide Laudig with the computer tape copy if the refusal was in accordance with a "nondiscriminatory uniform policy" to not provide a computer tape copy. The Board contends that it has never permitted a member of the general public to duplicate, or obtain a duplicate copy of, the computer tape Laudig seeks. In support of this contention, the Board directs us to the deposition of Mary Agnes Bussing, the Democratic member of the Board of Voters Registration. According to Ms. Bussing, the Board's policy is that the Board does not give out either the computer tape itself, or copies of the tape, to anyone other than the Marion County Republican Chairman and Marion County Democratic Chairman.
While Laudig has alleged otherwise throughout this case, he has presented no competent evidence to support his allegations. According to McCullough v. Allen (1983), Ind. App., 449 N.E.2d 1168, 1171:
Generally, summary judgment is inappropriate when the evidence before the court discloses genuine issues of material fact or a good faith dispute as to the inferences to be drawn from the facts. McKenna v. City of Fort Wayne (1981), Ind. App., 429 N.E.2d 662. The moving party bears the burden of proving that no issue of material fact exists. Thus, a defendant seeking summary judgment must set forth specific facts that negate the plaintiff's claim. See Layman v. Atwood (1977), 175 Ind. App. 176, 370 N.E.2d 933... . If the movant produces evidence to meet this burden, the opposing party must respond, setting forth specific facts to show there is a genuine issue for trial. Shideler v. Dwyer (1981) 275 Ind. 270, 417 N.E.2d 281; Johnson v. Padilla (1982), Ind. App., 433 N.E.2d 393; Bassett v. Glock (1977), 174 Ind. App. 439, 368 N.E.2d 18. If the opposing *707 party does not so respond, `summary judgment, if appropriate, shall be entered against him.' T.R. 56(E); Wallace v. Indiana Ins. Co. (1981), Ind. App., 428 N.E.2d 1361.
Laudig's claim here is that the Board engages in nonuniform and discriminatory distribution of the computer tape at issue. Because Laudig has not responded to the Board's specific facts that negate his claim, so as to demonstrate that there is a genuine issue for trial, we hold that summary judgment was appropriately entered against him on this issue.
Next, Laudig stresses that the Board has included information in its voters registration list that is not required pursuant to statute. For a reason that he never makes clear, Laudig argues that, because the Board's list contains information in addition to that required by statute, Laudig is entitled a copy of the computer tape containing the list.
Pursuant to I.C. § 3-7-7-9, the Board must prepare certified copies of the list of registered voters for each precinct of the county not later than ten days before an election where the registration books are to be used. The statute mandates that the list "must contain the full name, address, and assigned identification number of each registered voter." The statute neither directs that the list may include only this information nor specifically prohibits the inclusion of additional information. Laudig cites no authority for his proposition that, should the Board include information in a record in excess of what the statute requires, the public becomes entitled to a copy of that record.
The record indicates that the Board has never refused Laudig access to all of the information contained on the computer tape. Rather, the Board has only refused to provide Laudig with a copy of that tape. We agree with the Board's contention that the existence of information on the computer tape in excess of what the statute requires is irrelevant to this issue.
Next, Laudig argues that, if the Board supplies the list to the precinct inspectors in written form while it provides it to the county chairpersons in computer form, the public becomes entitled to a copy of the computer tape because the Board has engaged in nonuniform distribution of the record. We disagree. Neither I.C. § 3-7-7-9 nor § 3-7-7-10 support this argument by Laudig.
I.C. § 3-7-7-9 and § 3-7-7-10 set out when the list is to be prepared, what the list must contain, who should receive copies of the list and that additional copies of the list must be kept open to the public. Neither of these statutes mandates that the Board must use a specific medium, or even the same medium, to convey the information to the inspectors and to the chairpersons. Again, pursuant to I.C. § 5-14-3-4(c), lists of names and addresses are excepted from the public access provisions so long as the agency is not statutorily required to publish and disseminate those lists to the public. Simply using different mediums to transfer a list of names and addresses to multiple parties does not remove that list from the explicit exception provided by I.C. § 5-14-3-4(c) to lists of names and addresses. Laudig's argument here also fails.
Finally, Laudig argues that he is entitled to a copy of the computer tape because the Board allegedly engaged in nonuniform distribution of the tape when it provided several governmental entities and a private company either with the use of, or a copy of, the tape. Laudig additionally alleges that a public official, (i.e., the Clerk of the Circuit Court of Marion County), against whom Laudig was running for public office, had "connections" with the private company and used these connections to gain access to the tape.
To support the portion of his allegations concerning the private company and the rival public official, Laudig directs us both to the deposition of Mary Agnes Bussing, the Democratic member of the Board of Voters Registration, and to testimony presented at the parties' July 30, 1990, hearing. A careful review of Bussing's deposition, however, reveals the following. First, Bussing stated that the Board's software *708 company, Signaware, prepared a special tape for the Board containing a list of the names and addresses of only those registered voters whose precincts had been changed due to redistricting. Second, Bussing stated that the Board sent this specially prepared tape to a company, Signaware, in Indianapolis so that the company could put labels on postcards for a mailing to only those voters whose precincts had changed. Third, Bussing stated that the Board originally employed the private company, not the Clerk of the Circuit Court.
Bussing also stated that the Clerk of the Circuit Court did not have access to the information maintained by the Board during this time, and that, although the Clerk had made several written requests to obtain access to the Board's computer tape, the Board had never provided a copy of that tape to her. Finally, as we mentioned earlier, Bussing stated that it was the Board's policy not to give out copies of the computer tape that Laudig desired.
A careful review of the testimony presented at the hearing of July 30th indicates that the parties agreed to two stipulations. First, the parties stipulated that the Marion County Clerk, as the secretary for the County Election Board, paid for a mailing made under the name of the Marion County Election Board, to certain registered voters in Marion County whose precincts had been changed due to redistricting, and that the Board had made the names and addresses of these voters available in electronic form to the entity doing the mailing. Thus, according to Bussing's deposition and the parties' first stipulation, the special tape created by Signaware contained only the names and addresses of the voters affected by the redistricting and was not at all a "copy" of the computer tape as Laudig alleges. Additionally, the Clerk only paid for the mailing and did not receive the special electronic tape. Laudig overstates both the contents of Bussing's deposition and the parties' first stipulation when he suggests that the two indicate a public official and a private company either had use of, or a copy of, the computer tape that he seeks.
To support the portion of his allegations concerning other governmental entities that either had use of, or a copy of, the computer tape, Laudig directs us to the second stipulation made by the parties at the hearing of July 30th. According to the record, however, the parties stipulated only that the Board makes available to court services hardcopy, pre-printed summonses with the names and addresses of randomly selected registered voters for the purpose of jury selection. Bussing's deposition supports the parties' stipulation by essentially restating it. Again, Laudig appears to distort the evidence.
Considering all of the pleadings, affidavits, depositions, admissions, answers to interrogatories and testimony in the light most favorable to Laudig, we hold that the trial court correctly determined that no genuine issue of material fact remained for the court to resolve and that the Board was entitled to judgment as a matter of law. We therefore affirm both the court's entry of summary judgment in favor of the Board and the court's entry denying Laudig's motion for summary judgment.
Second, we deal with the issue of whether the trial court erred by granting the Board's motion to strike the affidavit of Bradford Mason which was attached to Laudig's motion for summary judgment.
During the summary judgment hearing of July 30th, the Board made an oral motion to strike the affidavit of Bradford Mason on the grounds that the evidence and facts alleged within Mason's affidavit were irrelevant to the issue before the court. According to an entry of the record, on September 17 the court granted the Board's motion to strike Mason's affidavit. Because Laudig asks us to overturn the trial court's ruling concerning the relevancy of an item of evidence, he must meet a stringent standard of review. Rulings concerning the relevancy of evidence are largely within the discretion of the trial court, and a determination made by that court will not be disturbed upon appeal unless it is clearly erroneous. Thornton v. Pender (1978), 268 Ind. 540, 547, 377 N.E.2d 613, *709 618. This is to say that we may not overturn the trial court's ruling unless the ruling was against the logic and effect of the facts and circumstances before the court. Boles v. Weidner (1983), Ind., 449 N.E.2d 288, 290.
We do not find that the court's ruling here was against the logic and effects of the facts and circumstances before it. The court was called upon to determine whether, pursuant to I.C. § 5-14-3-4(c), the Board had maintained a nondiscriminatory uniform policy in refusing to allow Laudig to duplicate, or obtain a duplicate copy of, the computer tape at issue. We agree with the Board's contention that what various other agencies do with regard to whether or not they release their computer tapes is of no probative value on the issue that the trial court faced. Because the evidence in Mason's affidavit, which was attached to Laudig's motion for summary judgment, was irrelevant to the issue before the trial court, we hold that the court did not abuse its discretion by granting the Board's motion to strike Mason's affidavit.
Third, we consider the issue of whether the trial court erred by granting the Board's motion to strike the affidavits of Bradford Mason which were attached to Laudig's motion to correct error and Laudig's supplemental memorandum in support of his motion to correct error.
We begin our analysis by looking to Trial Rule 59(H), which governs this issue. Trial Rule 59(H) states:
(1) When a motion to correct error is based upon evidence outside the record, the motion shall be supported by affidavits showing the truth of the grounds set out in the motion and the affidavits shall be served with the motion.
(2) If a party opposes a motion to correct error made under this subdivision, that party has fifteen (15) days after service of the moving party's affidavits and motion, in which to file opposing affidavits.
If no opposing affidavits are filed, the appellate court is required to accept as true the facts averred in the affidavits supporting a motion to correct errors. In re Marriage of Myers (1979), 180 Ind. App. 284, 387 N.E.2d 1360; Roberts v. Watson (1977), 172 Ind. App. 108, 359 N.E.2d 615.
Next, we consider Kline v. Business Press, Inc. (1987), 516 N.E.2d 88. In Kline, the fourth district held that,
[w]hen ruling on a Trial Rule 56 [sic] Motion to Correct Errors, it is proper for the trial court to ignore those parts of affidavits not admissible.
Id. at 91.
Laudig based his motion to correct error on the ground of newly discovered evidence which was outside the record. In accordance with Trial Rule 59(H), Laudig was required to support his motion with affidavits that demonstrated the truth of the ground he asserted. In order to demonstrate the truth of the ground asserted, Laudig was required to present the court with affidavits containing competent evidence. In reviewing Mason's affidavits, we agree with the Board that the affidavits Laudig presented are no more than hearsay.[3] In both of the affidavits, Mason simply recites alleged conversations with, and statements made by, another individual in order to demonstrate the truth of those statements. Laudig has not met the requirement of Trial Rule 59(H) in that he has not supported his motion to correct error with affidavits that demonstrate the truth of the grounds he asserts.
The standard set out in Trial Rule 56(E) governing affidavits submitted in support of summary judgment motions provides guidance on this issue. Pursuant to Trial Rule 56(E),
[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent *710 to testify to the matters stated therein.
In order for a court to consider an affidavit which supports or opposes a summary judgment motion, the affidavit must satisfy the three-pronged test set out in Trial Rule 56(E). While Trial Rule 59(H) does not specifically set out this same test, Kline does hold that, when ruling on a motion to correct error, it is proper for a trial court to ignore those parts of affidavits that are not admissible. It follows that a trial court may properly strike an affidavit that supports a motion to correct error when that affidavit is completely inadmissible. We hold that the trial court properly struck both affidavits.
As a side note, Laudig directs our attention to the fact that the Board did not submit opposing affidavits to Mason's affidavits. According to Laudig, "hearsay in affidavits is properly considered unless opposing affidavits are filed." (Appellant's Brief, p. 25, citing In re Marriage of Myers (1979), 180 Ind. App. 284, 387 N.E.2d 1360.) We disagree with Laudig's contention that the Board had an affirmative duty to rebut Mason's incompetent affidavits.
Laudig misinterprets In re Marriage of Myers when he alleges that Myers bestows a duty upon to the Board to respond to Mason's incompetent affidavits, and that, unless they do, "hearsay in affidavits is properly considered." Myers centered around a decree dissolving the marriage of the Myers. Myers, 387 N.E.2d at 1361. After the court entered judgment awarding custody of the couple's only child to the wife, the husband filed a motion to correct errors. Id. The husband attached to the motion his attorney's sworn affidavit, pursuant to Trial Rule 59(H), concerning relevant conversations between the attorney and the presiding judge in the case. Id. The wife's attorney, who was present during one of the conversations between the trial judge and the opposing attorney, did not file a counter affidavit. Id. at 1362. The husband's supporting affidavit became a part of the record and the trial judge certified the transcript for appeal. Id. The judge failed, however, to file opposing affidavits pursuant to Indiana Rules of Procedure, Appellate Rule 7.2(A)(3)(c). Id. Pursuant to AP. 7.2(A)(3)(c):
If statements or conduct of the trial judge are in controversy, the statement shall be supported by sworn affidavit which shall be submitted to the trial judge for his certification. If he refuses to certify the statement he shall file opposing affidavits. All such affidavits shall be included in the record by the clerk of the trial court.
Myers is distinguished from this case because in Myers there is no indication either that the court considered the substance of the attorney's affidavit inadmissible evidence or that the opposing party contested the admissibility of the attorney's affidavit. Here, rather than filing counter affidavits, the Board filed a motion asking the court to ignore Mason's affidavits because the substance of the affidavits contained inadmissible hearsay evidence. By granting the Board's motions, the trial court obviously agreed. Again, in following Kline, a trial court may properly ignore those parts of the affidavit that are not admissible when ruling on a motion to correct error.
Laudig additionally asserts that, pursuant to Abell v. Clark County Department of Public Welfare (1980), Ind. App., 407 N.E.2d 1209, the court must accept the "facts" averred to in Mason's affidavits as true because the Board did not file opposing affidavits. We disagree with Laudig's contention that Abell applies to this issue. Abell deals with an admissible affidavit, filed in support of a motion to correct error, and the ramifications of the opposing party's failure to file an opposing affidavit to the admissible affidavit, when the evidence upon which the alleged error is based is outside the record. Id. Abell does not deal with Laudig's issue here, which is whether the trial court erred by granting the Board's motion to strike inadmissible hearsay affidavits, attached to Laudig's motion to correct error and to his supplemental memorandum in support of his motion to correct error. We do not agree with Laudig's assertion that a reviewing court is *711 obliged to consider inadmissible hearsay evidence as true factual material simply because the other party did not file opposing affidavits to inadmissible affidavits.
Fourth, we deal with the issue of whether the trial court abused its discretion by quashing the deposition of Thomas Moynahan and issuing an order protecting the Board from further discovery.
We begin our analysis by stating that Laudig has waived this issue on appeal because he has failed to adhere to Ind. Appellate Rule 8.3(A)(7). Specifically, Laudig's argument on this issue provides no citation to authority and no citation to the record. In Keller v. State (1990), Ind., 549 N.E.2d 372, the supreme court stated that the requirement that a party provide a cogent argument with adequate citation to authority serves at least the two following objectives:
First, it affords opposing parties a fair opportunity to respond. Second, it promotes impartiality in the appellate tribunal; a court which must search the record and make up its own arguments because a party has presented them in perfunctory form runs the risk of being an advocate rather than an adjudicator.
Id. at 373.
Even though Laudig has waived this issue on appeal, we will point out that Laudig's argument lacks merit. Pursuant to Trial Rule 27(B), a trial court "may allow the taking of the depositions of witnesses to perpetuate their testimony for use in the event of further proceedings in such court." (emphasis added). Furthermore, if the court finds it proper to perpetuate the testimony in order to avoid a failure or delay of justice, the court may make an order allowing the depositions to be taken. This language clearly means that, pending appeal, the decision of whether or not to allow an attorney to depose a witness so as to perpetuate that witness's testimony for use in further court proceedings is left to the discretion of the trial court. Our review here should then be limited to whether or not the trial court has abused its discretion in denying Laudig's request to depose Moynahan.
"An abuse of discretion is an erroneous conclusion and judgment, one clearly against the logic and effect of the facts or the reasonable, probable deductions to be drawn therefrom." Boles v. Weidner (1983), Ind., 449 N.E.2d 288, 290. The facts of Laudig's case indicate that, four days after the court granted the Board's motion to quash, Laudig filed a motion for leave to take the deposition of Moynahan. At the hearing on Laudig's motion to correct error, the trial court heard testimony from Laudig concerning his desire to depose Moynahan. In reaching its decision to deny Laudig's request to depose Moynahan, the trial court therefore considered not only Laudig's written motion, but also Laudig's oral arguments from the hearing. The court had ample testimony from Laudig from which to reach its decision.
In reviewing Laudig's arguments from both of these sources, we hold that the trial court did not abuse its discretion in denying Laudig's request to depose Moynahan. A review of the record reveals that Laudig made no convincing arguments that, without Moynahan's deposition, a failure or delay of justice would occur. Instead, Laudig appears to have been on a fishing expedition, searching for newly discovered evidence to present at the hearing on his motion to correct error.
The Board presented testimony at the hearing on the motion to correct error that Moynahan was both known and available to Laudig for deposition testimony prior to the summary judgment hearing. Laudig has not objected to the testimony or disputed this fact. Therefore, Laudig easily could have conducted Moynahan's deposition, and additional discovery, at the appropriate time, which was prior to the court's entry of judgment.
Contrary to what Laudig contends, the trial court did not abuse its discretion when it refused to allow Laudig to conduct post-judgment depositions and discovery.
Finally, we address the issue of whether the trial court erred by denying Laudig's motion to correct error.
*712 "Motions predicated upon newly discovered material evidence are viewed with disfavor." Kimmel v. State (1981), 275 Ind. 575, 418 N.E.2d 1152, 1157. Whether to grant a new trial on the grounds of newly discovered evidence is within the discretion of the trial court, and, on appeal from a denial of the motion, we reverse only if the trial court could not reasonably have reached a conclusion that, upon retrial, a different result was not probable. Id.
To prevail on a motion to correct error based on newly discovered evidence, Laudig needed to demonstrate that the evidence could not have been discovered and produced at trial with reasonable diligence; that the evidence is material, relevant, and not merely cumulative or impeaching; that the evidence is not incompetent; that he exercised due diligence to discover the evidence in time for the summary judgment hearing; that the evidence is worthy of credit; and, that the evidence raises the strong presumption that a different result would have been reached upon retrial. Wiles v. State (1982), Ind., 437 N.E.2d 35; Bubb v. State (1982), Ind. App., 434 N.E.2d 120.
The trial court here could reasonably have reached the conclusion that, upon retrial, a different result was not probable. Pursuant to Carter v. State, (1987), Ind., 512 N.E.2d 158, where allegedly newly discovered evidence was not entered into the record through sworn affidavits or at the hearing on the motion to correct error, there were no facts properly in the record to support Laudig's argument that newly discovered evidence existed. Inasmuch as the affidavits that Laudig submitted to support his affidavit were stricken from the record by the trial court, and inasmuch as Laudig presented no additional evidence at the hearing on his motion to correct error, Laudig failed to submit any evidence to the court that he had newly discovered, material evidence that he could not have discovered through due diligence before the court's entry of summary judgment against him, and that this evidence would probably result in a different verdict.
For the reasons stated, we hold that the trial court did not err by denying Laudig's motion to correct error.
AFFIRMED.
RATLIFF, C.J., and GARRARD, J., concur.
NOTES
[1] When summary judgment is granted, findings of fact are inappropriate as there are no issues of fact. Uhl v. Liter's Quarry of Indiana, Inc. (1979), 179 Ind. App. 178, 384 N.E.2d 1099. We will take the trial court's findings as indications of the material facts as to which there are no genuine issues.
[2] Exhibit B consisted of the affidavit of Bradford Mason.
[3] Hearsay evidence is defined in Trustees of Indiana University v. Williams (1969), 252 Ind. 624, 251 N.E.2d 439, 443, as "testimony by a witness in a judicial proceeding relative to an extrajudicial declaration by another and which is offered for the purpose of proving the facts asserted by the declarant."