Terry W. **ANDERSON** and Kathy Anderson, Appellants,

v.

**HORIZON HOMES, INC.,** Appellee.

No. 06A05–9401–CV–11.

Court of Appeals of Indiana, Fifth District.

Jan. 10, 1995.

Transfer Denied April 21, 1995.

**1282**

Michael A. Ksenak, Bowman & Ksenak, Indianapolis, for appellants.

Philip L. Gundlach, Hinkle Keck & Gundlach, Danville, for appellee.

## OPINION

SHARPNACK, Chief Judge.

Terry and Kathy Anderson ("the Andersons") appeal from the trial court's entry of summary judgment in favor of Horizon Homes, Inc. ("Horizon"), awarding damages to Horizon and ordering that the Andersons should take nothing by way of their counterclaim. We affirm.

The Andersons raise two issues for our review:

1. whether the trial court erred as a matter of law in the amount of damages it awarded to Horizon; and,

2. whether the trial court erred as a matter of law in denying the Andersons' counterclaim for damages.

Horizon cross-appeals, raising a single issue for our review:

1. whether the Andersons filed a late praecipe, thereby forfeiting their right to bring this appeal.[1]

In June, 1988, the Andersons purchased real estate in Plainfield, Indiana. The Andersons then contracted with Horizon for the construction of a single-family residence on the lot at a price of $89,835.00. The contract provided for a $500.00 payment to Horizon at the time of execution, with the balance to be paid in four installments.

Pursuant to the contract, Horizon assumed responsibility for obtaining permits and bonds necessary for prosecution of the work. The Andersons assumed responsibility for complying with all zoning requirements and assumed "all responsibilities and costs for

---

1. The Andersons, in anticipation of Horizon's allegation of error, argue in their appellants' brief that their praecipe was timely filed and that the trial court did not err in denying Horizon's motion to strike their praecipe. Horizon, in turn, argues in their appellee's brief that the trial court erred and the Andersons' praecipe was not timely filed. Because it is Horizon that alleges reversible trial court error on this issue, we treat it as an issue raised by Horizon on cross-appeal.

obtaining variances, rezonings, changes of set-back lines or easements." Record, pp. 27–28. The contract required the Andersons to give directions to Horizon for the location of the house and to provide Horizon with a staked survey. Further, the Andersons were made "solely responsible and liable for mistakes or errors in the location of the dwelling due to [the Andersons'] directions." Record, p. 28. The Andersons did not provide Horizon with a staked survey; they simply instructed Horizon to center the house from side to side on the lot. Pursuant to applicable restrictions, the house was placed at the front set-back line.

Horizon commenced construction of the house on September 16, 1988, without first obtaining a building permit. One month later, the Town of Plainfield advised Horizon to cease construction until a building permit was obtained. On October 21, 1988, Horizon submitted a building permit application. The application was denied on the grounds that the back of the house encroached into a flood plain. A second application made on November 2, 1988, was denied on the same grounds. On November 5, 1988, Horizon was paid the first draw for work completed to date.

Horizon commenced discussions with the Town of Plainfield and the Department of Natural Resources ("DNR") to find a solution to the encroachment problem. In early December, 1988, the Andersons learned of Horizon's failure to obtain a building permit and the encroachment problem, and hired counsel. On February 13, 1989, Horizon submitted an application to the DNR seeking permission to encroach into the flood plain or, in the alternative, to have the floodway line moved. Eventually, the Andersons requested their counsel to intervene in the DNR proceedings to keep apprised of the situation and, on May 25, 1989, the

Andersons were added as claimant intervenors. On July 26, 1989, by means of an agreed order, the DNR moved the floodway line fifteen feet, thereby eliminating the encroachment.

A building permit was issued on September 13, 1989, and construction on the residence resumed. Subsequently, Horizon requested payment of the second draw pursuant to the contract. The Andersons refused to pay Horizon any additional sums absent a writing from Horizon assuring completion of the house by a date certain. On October 4, 1989, the Andersons went to Horizon's office and, among other things, attempted to obtain a date certain for completion of the work. Horizon refused to provide a definite date for completion. The next day, the Andersons changed the locks on the house. In early November, 1989, the Andersons attempted to negotiate a new contract with Horizon, but these negotiations were unsuccessful.

 On January 19, 1990, Horizon filed a complaint for temporary injunction, to foreclose mechanic's lien, and for damages against the Andersons. Following a change of venue, the Andersons filed their answer, affirmative defenses, and counterclaim for damages.[2] On September 15, 1992, Horizon filed its motion for summary judgment. On November 9, 1992, the Andersons filed their motion for summary judgment. On May 14, 1993, the trial court entered its order granting in part and denying in part the parties' respective motions for summary judgment.[3] The order left for resolution by trial the cross-claim of the Andersons against Lincoln Federal Savings Bank and their third-party complaint against Hardin's Creekside Estates.

The trial court ruled that Horizon was not entitled to foreclosure of its mechanic's lien because it was not timely filed and that Hori-

---

2. Horizon's complaint also named Lincoln Federal Savings Bank as a defendant due to its interest in the property as mortgagee. The Andersons filed a cross-claim for breach of fiduciary duty against Lincoln Federal, and filed a third-party complaint against the developer, Hardin's Creekside Estates, Inc. None of the claims against Lincoln Federal or Hardin's are at issue in this appeal.

3. The trial court issued findings of fact and conclusions of law when it ruled on the parties' cross-motions for summary judgment. Findings of fact are inappropriate when summary judgment is entered because there are no issues of fact. *Laudig v. Marion County Board of Voters Registration* (1992), Ind.App., 585 N.E.2d 700, 702 n. 1, *trans. denied.* Thus, we will treat the court's findings as indications of material facts about which there are no genuine issues. *Id.*

zon was not entitled to reimbursement of sums it paid for fines arising from its failure to obtain a building permit. The trial court awarded Horizon damages of $14,587.64 on a theory of quantum meruit and $6,958.00 for expenses incurred in obtaining the agreed order. The trial court also ordered that the Andersons should take nothing by way of their counterclaim.

On June 11, 1993, a telephonic pre-trial conference among all parties and the trial court was conducted. Thereafter, the Andersons timely filed their motion to correct errors on June 16, 1993, which was denied by the trial court on September 17, 1993. *See* Ind. Trial Rules 59(C), 5(E), & 6(E). The Andersons filed their praecipe on October 18, 1993. Horizon filed a motion to strike the praecipe as untimely, alleging that the motion to correct errors had been denied by operation of law forty-five days after it was filed pursuant to T.R. 53.3(A) and that under I.C. § 33-1-6-3 the trial court had lost power and control over its judgment ninety days after it was entered. On November 22, 1993, in response to the Andersons' motion, the trial court ordered the correction of its docket entry of June 11, 1993, nunc pro tunc, to reflect that the parties had agreed that the time limits of T.R. 53.3(A) would not apply.

The trial court's order of November 22, 1993, for nunc pro tunc entry provides, in pertinent part:

"The Court being duly advised in the premises, now finds as follows:

1. That the Entry of the Pre–Trial Conference held telephonically on June 11, 1993, did not completely set forth the discussions and statements of the parties and the Court, and a clerical mistake was made in not accurately depicting the content of that Pre–Trial Conference as more specifically set forth below.

2. That ... [a] conversation was held between the Court and the parties regarding the Defendants' anticipated Motion to Correct Error....

\* \* \* \* \* \*

4. That Trial Rule 53.3 was discussed during the Pre–Trial Conference and the Court stated to the parties that it would diligently attempt to rule on said Motion to Correct Errors within the time limitation set forth in said Rule.... The Court stated that it intended to move expeditiously in its consideration of the Motion to Correct Errors, but could not state that it could issue its ruling on said Motion within forty-five (45) days of the date the Defendant [sic] filed their Motion to Correct Errors due to [a] congested court calander [sic] and vacation. The parties advised the Court that they would provide the Court with the time necessary to properly rule on the Motion to Correct Errors.

5. The Court directs the Clerk to add the statement contained in paragraph 4 to the Court's Docket Entry of June 11, 1993, Nunc Pro Tunc."

Record, pp. 392–93.

On January 13, 1994, the Andersons filed the record of proceedings for this appeal.

I

We address first the issue raised by Horizon on cross-appeal, that is, whether the Andersons filed a late praecipe, thereby forfeiting their right to bring this appeal. *See* Ind. Appellate Rule 2(A). Horizon argues first that the trial court's denial of the Andersons' motion to correct errors was without legal effect because the motion already had been denied by operation of law; therefore, the Andersons' praecipe, filed thirty days after the court's denial of the motion on September 17, 1993, was late. Horizon further argues the trial court had no authority to change its previous docket entry, nunc pro tunc, to reflect that the parties had agreed that the time limit in T.R. 53.3(A) would not apply. Finally, Horizon contends that even if the parties effectively waived the time limit in T.R. 53.3(A), the court was without authority to deny the Andersons' motion to correct errors on September 17, 1993, because it lost control over its judgment on August 12, 1993 pursuant to Ind. Code § 33-1-6-3.

■ We address first Horizon's contention that the Andersons' motion to correct errors was denied by operation of law pursuant to

T.R. 53.3. Indiana Trial Rule 53.3(A) provides:

"In the event a court fails for forty-five (45) days to set a Motion to Correct Error for hearing, or fails to rule on a Motion to Correct Error within thirty (30) days after it was heard or forty-five (45) days after it was filed, if no hearing is required, the pending Motion to Correct Error shall be deemed denied...."

T.R. 53.3(A). Horizon contends that the Andersons' motion to correct errors was deemed denied pursuant to T.R. 53.3(A) forty-five days after it was filed, i.e., on July 31, 1993 and, therefore, the Andersons' praecipe, filed October 18, 1993, was not timely. The time limit in T.R. 53.3(A) does not apply, however, where "[t]he parties who have appeared or their counsel stipulate or agree on record that the time limitation ... shall not apply." T.R. 53.3(B)(2). Therefore, if the pre-trial conference concluded as recited in the nunc pro tunc entry of November 22, 1993, the automatic denial provision of T.R. 53.3(A) was inoperative. Horizon does not deny having agreed that the time limitations of T.R. 53.3(A) would not apply. Instead, Horizon argues that assuming, *arguendo*, it had made such an agreement, it was not "on record" as required by T.R. 53.3(B)(2). The telephone conference of June 11, 1993, was not tape recorded.

Horizon refers us to cases stating that a trial court speaks only through its record, which is its order book, and that oral stipulations made at a pre-trial conference are not binding in the absence of a court order. *Fruehauf Trailer Division v. Thornton* (1977) 174 Ind.App. 1, 366 N.E.2d 21, 33, *reh'g denied; Kansas City Life Insurance Co. v. Bolerjack* (1970), 147 Ind.App. 629, 263 N.E.2d 375, 377. These cases are distinguishable from the present case, however, as each involves the absence of a pre-trial order containing stipulations made by the parties prior to trial. *See* T.R. 16(J) ("The court shall make an order which recites ... the agreements made by the parties ... which limit the issues for trial ..."). In this case, the issue is not the complete absence of a pre-trial order limiting the issues for trial. The issue is the failure of the June 11, 1993,

docket entry to reflect completely the matters covered during the telephone conference. Additionally, Horizon seeks to take advantage of the trial court's failure to issue an order containing the parties' agreement where the agreement was made at the trial court's request and Horizon failed to object to the absence of such an order. *See State Farm Mutual Automobile Insurance Co. v. Shuman* (1977), 175 Ind.App. 186, 370 N.E.2d 941, 951 (a party should be required to make an objection to the lack of a pre-trial order by requesting an order or directing trial motions), *reh'g denied.*

The November 22, 1993, order is clear that the parties agreed, at the trial court's urging, that the forty-five day time limit of T.R. 53.3(A) would not apply. This order and the trial court's entry of June 11, 1993, documenting the conference call and reciting the other matters covered therein, lead us to conclude that the "on record" requirement of T.R. 53.3(B) was satisfied.

■ Horizon contends next that the trial court did not have the authority to issue its order for nunc pro tunc entry.

■ Clerical mistakes and errors in the record arising from oversight or omission may be corrected by the trial court at any time prior to the filing of the record on appeal. T.R. 60(A).

"A *nunc pro tunc* entry is 'an entry made now of something which was actually previously done, to have effect as of the former date.' *Perkins v. Hayward* (1892), 132 Ind. 95, 31 N.E. 670. Such entries may provide a record of an act or event to which no reference at all is made in the court's order book, as was the case in *Neuenschwander v. State* (1928), 200 Ind. 64, 161 N.E. 369, and *Warner v. State* (1924), 194 Ind. 426, 143 N.E. 288, or they may serve to change or supplement an entry already existing in the order book as was the case in *Apple v. Greenfield Banking Co.* (1971), 255 Ind. 602, 266 N.E.2d 13, and *Perkins v. Hayward, supra.* Such entries must be based upon written memoranda, notes, or other memorials which (1) must be found in the records of the case; (2) must be required by law to be kept; (3)

must show action taken or orders or rulings made by the court; and (4) must exist in the records of the court contemporaneous with or preceding the date of the action described.... In addition to the above requirements, such entries may be made only upon notice to the parties and an opportunity of the parties to be heard on the matter. *Apple v. Greenfield Banking Co., supra; Neuenschwander v. State, supra.* The requirement of a written memorial may be relaxed when a simple correction of a clerical error in the record is sought."

*Stowers v. State* (1977), 266 Ind. 403, 363 N.E.2d 978, 983.

■ Horizon notes that *"entries may not be entered nunc pro tunc from thin air." Blum's Lumber & Crating, Inc. v. James* (1972), 259 Ind. 220, 285 N.E.2d 822, 825 (emphasis in original). In *Blum's Lumber,* the mere entry of a date in the bench docket was an insufficient written memorial to form the basis for establishing an error or omission sought to be corrected. *Id.* In this case, the trial court's June 11, 1993, chronological case summary entry contains more than a mere date:

"Pre–Trial Conference held by phone with counsel for all parties. Defendant Anderson expected to file Motion to Correct Errors. Subsequent to Court's ruling on Motion to Correct Errors, the parties will determine whether an appeal shall be taken and if so all parties agree that the matter shall not be set for trial, until appealed matters are resolved for judicial economy. If appeal is not taken, Court will then set for Pre–Trial Conference."

Record, p. 3. "It is elementary that the court speaks only through its official records, the primary one being its order book." *Blum's Lumber, supra,* 285 N.E.2d at 824. The chronological case summary is an official record of the trial court. T.R. 77(B). We hold that the trial court's June 11, 1993, entry provided a sufficient memorial on which to base the nunc pro tunc entry.

■ Horizon contends next that the trial court improperly used the nunc pro tunc entry to correct an error of substance, rather than a clerical error, in contravention of T.R.

60(A). *See First Bank of Madison v. Bank of Versailles* (1983), Ind.App., 451 N.E.2d 79, 81, *reh'g denied.* We disagree.

A clerical error is "a mistake by a clerk, counsel, judge or printer which is not the result of a judicial function and cannot reasonably be attributed to the exercise of judicial consideration or discretion." *Sarna v. Norcen Bank* (1988), Ind.App., 530 N.E.2d 113, 115, *reh'g denied, trans. denied.* The entry of June 11, 1993, shows clearly that the filing of a motion to correct errors by the Andersons was discussed. It also shows that "[s]ubsequent to Court's ruling on Motion to Correct Errors" decisions would be made as to appeals and that further action in the case would await the outcome of any appeal. This is a sufficient record of what was done on June 11, 1993, to permit a nunc pro tunc entry to provide further details of what *actually occurred.* The trial court's order for nunc pro tunc entry simply clarified the record of the June 11, 1993 telephone conference, and was not the result of a judicial function or reasonably attributed to the exercise of judicial consideration or discretion. *See id.* (legal description found in 1985 decree of foreclosure and order of sale could be clarified in 1987 pursuant to T.R. 60(A)).

■ Finally, Horizon argues that even if the parties effectively waived the time limitation in T.R. 53.3(A), the trial court was without authority to deny the Andersons' motion to correct errors on September 17, 1993. Indiana Code § 33–1–6–3 provides:

"All courts shall retain power and control over their judgments for a period of ninety (90) days after the rendering thereof in the same manner and under the same conditions as they heretofore retained such power and control during the term of court in which the judgments were rendered."

I.C. § 33–1–6–3. Horizon thus contends that the trial court lost jurisdiction over its judgment on August 12, 1993, i.e., ninety days after the trial court's disposition of the cross-motions for summary judgment.

In support of its position, Horizon cites *Jackson v. Paris* (1992), Ind.App., 598 N.E.2d 1106, *reh'g denied, trans. denied,* and *State v. Eaton* (1991), Ind.App., 581 N.E.2d

956, 960, *reh'g denied, trans. denied.* Neither of these cases is determinative of the issue before us. In *Jackson,* this court held that a trial court lacked the authority to deny a motion to correct errors after the motion had been denied by operation of law pursuant to T.R. 53.3(A). 598 N.E.2d at 1107–08. *Jackson* did not discuss I.C. § 33–1–6–3 and none of the exceptions in T.R. 53.3(B) were met. *Id.* Similarly, in *Eaton,* this court held that a trial court had no authority to grant additur after its authority to rule on a motion to correct errors had been extinguished by operation of law pursuant to T.R. 53.3(A). 581 N.E.2d at 959–60. The court then added in *dicta,* "Moreover, the trial court lost jurisdiction over the case after ninety (90) days had elapsed from the date of judgment." *Id.* at 960 (citing I.C. § 33–1–6–3). Again, none of the exceptions found in T.R. 53.3(B) were involved. *Id.* Horizon's argument ignores the effect of the nunc pro tunc entry which is that, as of ninety days after the summary judgment of May 14, 1993, or August 12, 1993, the case was still pending before the trial court on the motion to correct errors.

Previously, our judicial system observed "term of court." *M.R. by Ratliff v. Meltzer* (1986), Ind.App., 487 N.E.2d 836, 839, *reh'g denied, trans. denied.* A trial court retained broad powers to modify, set aside, or vacate a judgment during the term in which the judgment had been rendered and generally such powers expired after the term of court ended. *Id.* at 839–40. In 1967, I.C. § 33–1–6–3 was enacted, replacing the common law term of court and "limiting such period to 90 days after rendition of the judgment." *Id.* at 840. Three years later, our supreme court formally adopted our trial rules, effective January 1, 1970.

Although there is case law stating that the ninety-day limit in I.C. § 33–1–6–3 is "absolute," *Pettiford v. State* (1987), Ind.App., 504 N.E.2d 324, 326, certain exceptions to the statutory time limit have been recognized. *See, e.g., Masterson v. State* (1987), Ind.App., 511 N.E.2d 499, 500 (observing that I.C. § 33–1–6–3 may have been superseded by the trial rules); *Arsenal Savings Ass'n v. Westfield Lighting Co., Inc.* (1984), Ind.App., 471 N.E.2d 322, 325–27 (trial court retains

jurisdiction over its judgment beyond statutory ninety day limit in cases involving child custody and support; T.R. 60(A) permits entries made nunc pro tunc to correct clerical mistakes in judgments and errors due to oversight or omission at any time except during pendency of an appeal; T.R. 60(B) permits correction of errors in substance of judgment beyond the ninety day limit); *see also Chapin v. Hulse* (1992), Ind.App., 599 N.E.2d 217, 219–20 (after issuing its final judgment, the trial court retains such continuing jurisdiction as permitted by the judgment itself, by statute, or by court rule; under I.C. § 33–1–6–3, courts "generally" retain jurisdiction over their judgments for ninety days), *trans. denied.* Our courts have held repeatedly that in the event of a conflict between a procedural statute and a procedural rule adopted by the supreme court, the latter shall take precedence. *See, e.g., Augustine v. First Federal Savings and Loan Ass'n of Gary* (1979), 270 Ind. 238, 384 N.E.2d 1018, 1020; *Neeley v. State* (1974), 261 Ind. 434, 305 N.E.2d 434, 435; *Yang v. Stafford* (1987), Ind.App., 515 N.E.2d 1157, 1160, *reh'g denied, trans. denied.* It is on this basis that we resolve the present issue.

There can be no question that T.R. 53.3 contemplates that under a variety of circumstances a trial court will rule on a motion to correct errors more than ninety days after judgment has been rendered. For example, T.R. 53.3(D) permits a trial court, on its own motion, to extend the time for ruling on the motion for up to thirty days. Where a party files the motion to correct errors on the thirtieth day after judgment was entered, no hearing on the motion is required, and the trial court extends its time for ruling on the motion by thirty days, the trial court could rule on the motion one hundred and five (105) days after judgment was rendered, in this case on August 27, 1993, and additional time may be granted to the trial court upon application to the supreme court. *See* T.R. 53.3(A) & (D).

The Andersons timely filed their motion to correct errors after the court's order of summary judgment. Pursuant to T.R. 53.3(B)(2) the parties agreed that the time limitations of 53.3(A) would not apply. There being no

hearing necessary on the motion, the parties' agreement resulted in lifting the requirement that the trial court rule on the motion within forty-five days after it was filed. At issue is how far beyond the forty-five day mark the court could rule. Horizon's position, in essence, is that the outside time frame for ruling on the motion is determined by application of the ninety-day limit in I.C. § 33–1–6–3. Although such a position is seductive in its simplicity, I.C. § 33–1–6–3 should not be applied where T.R. 53.3 is employed to determine the time allowed to rule on the motion.

We need not decide today exactly how much additional time a trial court is given to rule on a motion to correct errors when the parties have agreed that T.R. 53.3(A)'s time limit shall not apply. We hold simply that Indiana Code § 33–1–6–3 did not operate to deprive the trial court of the power to rule on the Andersons' motion to correct errors after August 12, 1993.

Accordingly, we conclude that the Andersons' praecipe was timely filed.

II

■ We address next whether the trial court erred as a matter of law in the amount of damages it awarded to Horizon. Although questioning the *quantum meruit* theory on which the trial court based its judgment, the Andersons do not challenge the award of $14,587.64 in damages to Horizon. The Andersons do contend, however, that the award of $6,958.00 to Horizon, representing Horizon's expense in obtaining the agreed order, is contrary to law. The Andersons argue that they should not be held liable for these costs because nothing in the contract imposes such liability on them and, in any event, Horizon should not be entitled to enforce such a provision. We disagree.

■ When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court: We may consider only those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the moving party for purposes of the motion for summary judgment. *Rosi v.*

*Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431, 434; T.R. 56(C), (H). Where, as here, the parties do not disagree on the material facts, "we must determine whether the trial court properly applied the law to those undisputed facts." *Muex v. Hindel Bowling Lanes, Inc.* (1992), Ind.App., 596 N.E.2d 263, 265. We will affirm the entry of summary judgment if it is sustainable on any legal theory consistent with the properly designated matter. *See id.;* T.R. 56(C). The fact that both parties requested summary judgment does not alter our standard of review. Instead, we must separately consider each motion to determine whether the moving party is entitled to judgment as a matter of law. *See Laudig, supra,* 585 N.E.2d at 704.

Article 2 of the contract provides:

"Permits and bonds necessary for the prosecution of the work shall be secured and paid for by BUILDER unless otherwise agreed to prior to the signing of the Contract. BUYERS further assume all responsibilities and costs for obtaining variances, rezonings, changes of set-back lines or easements. BUYERS are solely responsible and liable for mistakes or errors in the location of the dwelling due to BUYERS' directions. BUYERS shall at their expense furnish BUILDER with a staked survey of the real estate. BUYERS agree to compensate BUILDER for any delay and expenses due to such mistakes or errors."

Record, pp. 27–28. In addition, Article 14 of the contract provides:

"D. IT IS AGREED THAT UNLESS SPECIFICALLY PROVIDED FOR OTHERWISE IN THIS CONTRACT, BUILDER ASSUMES NO RESPONSIBILITY NOR MAKES ANY GUARANTEES CONCERNING THE SUITABILITY OF THE BUILDING SITE WHICH WOULD INCLUDE PERCOLATION TESTS, SOIL ANALYSIS OR SOIL CONDITIONS, SITE DEVELOPMENT, ORDINANCES, GOVERNMENTAL RULES OR REGULATIONS REGARDING USE, DRAINAGE AND FLOOD

CONTROL AND LAND OR MORTGAGE SURVEYS...."

Record, p. 32.

The Andersons argue that the contract is ambiguous, because there are no definitions of "variances," "rezonings," "changes of set-back lines," and "easements," and because the agreed order does not fall squarely within any of the terms in Article 2 for which they are responsible. They argue that this ambiguity requires that we construe the contract against the drafter, presumably Horizon, and that the agreed order should be treated as a "permit," requiring Horizon to bear the cost of obtaining it.

■ When interpreting a written contract, we determine the intent of the parties at the time of execution as revealed by the language they chose in expressing their rights and responsibilities. *Donnelley & Sons, Co. v. Henry–Williams, Inc.* (1981), Ind.App., 422 N.E.2d 353, 356. Where the terms of a contract are clear, the meaning of the contract is determined as a matter of law. *Piskorowski v. Shell Oil Co.* (1980), Ind.App., 403 N.E.2d 838, 844. Where a contract is ambiguous, however, and its meaning cannot be gleaned from the four corners of the instrument, the intention of the parties is a question of fact and resort to extrinsic evidence is proper. *English Coal Co., Inc. v. Durcholz* (1981), Ind.App., 422 N.E.2d 302, 308–09, *reh'g denied, trans. denied.* The test for determining if a contract is ambiguous is whether reasonable people would find the contract subject to more than one interpretation. *Radio Picture Show Partnership v. Exclusive International Pictures, Inc.* (1985), Ind.App., 482 N.E.2d 1159, 1167, *reh'g denied, trans. denied.* Upon our review of Articles 2 & 14, and the contract as a whole, we conclude that the contract is subject to only one possible interpretation and it is, therefore, unambiguous.

The fact that terms such as "variances" and "rezonings" are not defined does not render the contract ambiguous. We will give words their plain and usual meaning "unless, judging from the contract as a whole and the particular subject matter, it is clear some other meaning was intended." *INB Banking Company v. Opportunity Options, Inc.*

(1992), Ind.App., 598 N.E.2d 580, 582, *reh'g denied, trans. denied.* We find no reason to give the contract's terms anything other than their plain and usual meaning. Nor is it significant that the contract does not specifically mention "agreed orders."

■ Contracts should not be so narrowly interpreted as to frustrate their obvious design or so loosely interpreted as to relieve a party of a liability fairly within the scope of the contract's terms. *Radio Picture Show Partnership*, 482 N.E.2d at 1167. The agreed order provided for the movement of the floodway line to accommodate the Andersons' house without encroachment into the flood plain. Movement of the floodway line is in the same class of items for which the Andersons are responsible under Article 2. The agreed order was analogous to a rezoning. Additionally, pursuant to Article 14, section D, Horizon disavowed any responsibility for suitability of the site, including government rules or regulations regarding drainage and flood control. We find the Andersons' contention that the agreed order was a "permit" to be wholly unconvincing.

■ The Andersons also argue that even if the contract requires them to pay the costs of the agreed order, Horizon should not be allowed to enforce such a provision because Horizon committed the first material breach by failing to obtain a construction permit prior to commencing construction. Whether a party has committed a material breach of contract is a question of fact, the resolution of which is dependent on several factors. *Tomahawk Village Apartments v. Farren* (1991), Ind.App., 571 N.E.2d 1286, 1293. Even if Horizon's failure to obtain the building permit constituted a material breach, however, the trial court did not err in awarding Horizon the costs of obtaining the agreed order.

The undisputed facts establish that after learning of the encroachment problem and Horizon's failure to obtain a building permit prior to commencing construction, the Andersons accepted and eventually participated in Horizon's negotiations with the DNR to move the floodway line or to permit encroachment of the flood plain. Even ab-

sent the enforcement of the contract provisions requiring the Andersons to bear the costs of obtaining the agreed order, the law still would require the Andersons to reimburse Horizon. *Olsson v. Moore* (1992), Ind. App., 590 N.E.2d 160, 163 ("Principles of equity ... prohibit the unjust enrichment of a party who accepts the unrequested benefits another provides despite having the opportunity to decline those benefits"), *reh'g denied; American National Bank & Trust Co. v. St. Joseph Valley Bank* (1979), 180 Ind.App. 546, 391 N.E.2d 685, 687 ("A breaching party may recover, apart from the contract, in *quantum meruit* ").

The trial court did not err in awarding Horizon $6,958.00 for the costs Horizon incurred in obtaining the agreed order.

### III

■■ Finally, we address the question of whether the trial court erred as a matter of law in denying the Andersons' counterclaim for damages. The Andersons contend that they are entitled to consequential damages for their expenses arising from the delay in the completion of the house.

Indiana law recognizes that under certain circumstances, damages for breach of a construction contract may include damages based on loss of use where there is a long and unreasonable delay. *Johnson–Johnson v. Farah* (1952), 123 Ind.App. 87, 108 N.E.2d 638, 639. We agree with Horizon that such damages are not appropriate in the present case.

Article 5 of the contract provides:

"A. The work shall be substantially completed *90–120* days after BUYERS' and BUILDER'S receipt of a favorable mortgage commitment, UNLESS completion thereof shall be prevented by strikes, acts of God, inclement weather, material shortages, unavailability of sub-contractors, the acts of a public authority or other causes beyond the control of BUILDER. BUILDER assumes no responsibility for consequential damages incurred by BUYERS due to delay in occupying the contracted structure, i.e., expiration of mortgage commitment, storage of furniture, payment of additional rent to owners of prior residence and necessity of BUYERS making additional moves."

Record, p. 29. In their memorandum in support of their motion for summary judgment, the Andersons conceded that they had waived the contract's requirement for substantial completion within 90–120 days of a favorable mortgage commitment:

"Andersons do not dispute that waiver is an intentional relinquishment of the known right and is a voluntary act. Andersons do not dispute that they have waived the right to demand substantial completion within ninety (90) to one hundred twenty (120) days after receipt of a favorable mortgage commitment. The Andersons have, in fact, acted consistent with that waiver."

Record, p. 284. In addition, the Andersons accepted and participated in Horizon's efforts to resolve the encroachment problem through the DNR proceedings, as noted above. Finally, the Andersons accepted continued performance from Horizon until they changed the locks on the house on October 5, 1989.

The Andersons have failed to identify any basis on which to hold Horizon responsible in damages based on unreasonable delay. Thus, the trial court did not err in ordering that they should take nothing by way of their counterclaim.

For all the foregoing reasons, the trial court's judgment is affirmed.

AFFIRMED.

RUCKER, J., concurs.

SULLIVAN, J., concurs with Opinion.

SULLIVAN, Judge, concurring.

The majority holds that because the June 11, 1993 "entry" was contained in the Chronological Case Summary and because the CCS is an "official record" of the court, such entry, of itself, justified the November 22, 1993 nunc pro tunc order. I fully agree that the June 11 writing constitutes a sufficient written memorial upon which to base the nunc pro tunc order. I do not, however, believe that such result may be premised upon the giving of some independent judicial

significance to the Chronological Case Summary. That "record" is precisely what its title imports. It is a *summary* of judicial events which have taken place in the case. It does not have status independent of the event or events which are summarized. It is little more than a short-hand index of all of the proceedings which have taken place. Those individual events have significance in and of themselves but only if there is some other document or record of the event. Again, the summary does not have status or significance independent of the judicial events themselves.

Nevertheless, there is no doubt that the telephonic conference covered the matter of the prospective ruling upon the Motion to Correct Errors. There is no doubt that the court and the parties contemplated that the ruling might be made after August 12, 1993. There is no doubt that the subject matter of the conference has been memorialized in writing and there is no doubt in my mind that the nunc pro tunc order was valid. For this reason I agree that the Andersons' praecipe was timely filed.

In all other respects I fully concur in the majority opinion.