**TOWN & COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellant**

v.

**Dale HUNTER, Individually and as Administrator of the Estate of Sadie Marie Hunter, Deceased, Plaintiff-Appellee,**

**Carol S. Bulmer and Clifford D. Bulmer, Defendant-Appellees.**

No. 1–1283A384.

Court of Appeals of Indiana, First District.

Jan. 8, 1984.

Rehearing Denied Feb. 12, 1985.

C. Wendell Martin, Martin, Wade, Hartley & Hollingsworth, Indianapolis, for defendant-appellant.

C. Jack Clarkson, John O. Worth, Clarkson & Worth, Rushville, for plaintiff-appellee.

David P. Barrett, Barrett & Wilhelm, Brookville, for appellee Dale Hunter, Individually and as Administrator of the Estate of Sadie Marie Hunter, Deceased.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant Town & Country Mutual Insurance Company (Town & Country), appeals from a jury verdict and judgment of the Fayette Circuit Court granting plaintiff-appellee Dale Hunter (Hunter), an award of compensatory and punitive damages in his own right and as Administrator of the estate of his wife, Sadie Marie Hunter (Sadie), in his personal injury and wrongful death claim arising out of a collision with an uninsured motorist.

We affirm in part and reverse in part.

## STATEMENT OF THE FACTS

On May 23, 1975 at approximately 6:00 p.m., a collision occurred between a borrowed motorcycle which Hunter was driving, with Sadie as his passenger, and a 1965 Pontiac automobile owned by Clifford and Carol Bulmer, which Mrs. Bulmer was driving. Mr. Bulmer and the Bulmers' son and daughter were also in the car at the time of the collision.

Immediately before the accident both vehicles had been traveling south on Highway 121 outside of Laurel, Indiana. The collision occurred when the Bulmers' car began to turn right into a driveway, while Hunter was attempting to pass on the right. The motorcycle struck and glanced off of the Bulmers' front fender heading straight into a guardrail curving along the driveway which the Bulmers were attempting to enter.

As a result of the accident Hunter suffered severe injuries, including two broken legs, a dislocated shoulder and a broken arm, which required surgery and his hospitalization for a month. Sadie sustained severe internal injuries in addition to broken bones and died of her injuries several hours after the collision. Hunter had in effect at the time two policies of insurance with Town & Country which included uninsured motorist coverage for him and Sadie. The Bulmers were uninsured motorists.

Hunter had been at the Laurel Hotel for lunch on May 23, 1975. Sadie met him there and they left the hotel on the borrowed motorcycle. Hunter testified to Mrs. Bulmer's erratic driving from the time he first observed the Bulmer car outside the Laurel Hotel, until the collision took place. He stated that she nearly ran him off the road when she passed him on Highway 121, stopped in the middle of a bridge for over a minute at one point and immediately before the accident had crossed the center line and appeared to be preparing to turn left across the northbound lane of Highway 121 into an open area on the far side of the highway. Mr. and Mrs. Bulmer denied Hunter's claims and agreed between themselves that Hunter had sped out in front of them by the Laurel Hotel and that they thereafter passed him and drove at a consistent rate of speed until signalling their right turn into the driveway.

Pursuant to its investigation of the accident Town & Country discovered evidence that Hunter had some beer while at the Laurel Hotel. Town & Country could find no liability of Bulmers for the collision and therefore denied Hunter's uninsured motorist claim although reserve accounts had been set up in Hunter's name.

The Bulmers made a later, inconsistent statement at Hunter's attorney's office, admitting Mrs. Bulmer had slowed down on the bridge and had "swept out" over the center line before beginning her right turn into the driveway and Hunter may have been confused by her actions such that he believed he should pass the car on the right. She said her decision to turn into the driveway had been a sudden one. After reading this statement, Town & Country indicated a desire to reach a settlement agreement with Hunter on his uninsured motorist claim. However, the Bulmers later retracted their statements recorded in Hunter's attorney's office and reverted to their original version of the incident, admitting no fault on their part.

In early 1976 Town & Country paid $8,109.77 to Hunter as the full limits of the medical payment claims under both insurance policies and the death benefits. This suit proceeded only on the uninsured motorist claim and Hunter's request for punitive damages. The jury awarded Hunter $6,000 against the Bulmers and $10,000 against Town & Country as damages for his personal injuries, and $4,000 against the Bulmers and $30,000 against Town & Country as Administrator of Sadie's estate for damages caused by her wrongful death. In addition, the jury assessed $85,000 punitive damages against Town & Country for its failure to settle Hunter's uninsured motorist claims.

## ISSUES

Town & Country presents the following issues for our review:

I. Whether the trial court erred in awarding Hunter punitive damages; whether clear and convincing evidence of bad faith on the part of Town & Country had been presented.

II. Whether the awards of compensatory damages assessed against Town & Country were excessive.

III. Whether the award of compensatory damages to Hunter was errone-

ous as a matter of law because of his contributory negligence.

IV. Whether the trial court erred in refusing to give Town & Country's tendered instruction No. 7 stating Town & Country's interpretation of Hunter's insurance policies' liability clauses.

V. Whether the trial court erred in giving Hunter's Instruction No. 17 dealing with the defense to contributory negligence of willful and wanton behavior.

## DISCUSSION AND DECISION

I. *Punitive Damages.*

In order to warrant punitive damages, conduct on the part of the defendant reflecting malice, fraud, gross neglect, oppression or bad faith must be shown by clear and convincing evidence. *Travelers Indemnity Company v. Armstrong,* (1982) Ind., 442 N.E.2d 349. A good faith dispute over the amount of damages, if any, an insured is entitled to recover under his insurance policy will not supply the grounds for punitive damages. *Jones v. Abriani,* (1976) 169 Ind.App. 556, 350 N.E.2d 635. Nor is Town & Country bound to be correct in its evaluation of Hunter's claim. *Travelers Indemnity, supra.* Proof of bad faith on the part of Town & Country in denying Hunter's uninsured motorist claim is necessary to uphold the trial court's award of punitive damages. *Hoosier Insurance Company v. Mangino,* (1981) Ind.App., 419 N.E.2d 978.

Hunter argues Town & Country handled his claim in bad faith from the beginning; taking the side of the Bulmers and only speaking to him once, via telephone, while he was still in the hospital. Hunter alleges Town & Country failed to make a complete investigation, which would have favored his recovery, and was not even aware that Sadie had died until mid-June. Hunter further complains that Town & Country set up a reserve account in his name but denied his claim, and hired the attorney who represented the Bulmers.

Initially, we agree with Hunter that our uninsured motorist laws are remedial in nature and should be construed in favor of the insured. *Patton v. Safeco Insurance Company,* (1971) 148 Ind.App. 548, 267 N.E.2d 859. However, this concept cannot be taken to the extreme so that claims become nondisputable. As noted in *Travelers Indemnity, supra,* this would result in a prohibitive social cost to the insurance premium paying public. Courts must take care not to discourage honest litigation by allowing punitive damages against a party which is exercising its right to adjudicate a real dispute, even if that party is found to be in error and the litigation injures the other party. *First Federal Savings and Loan Association of Indianapolis v. Mudgett,* (1979) Ind.App., 397 N.E.2d 1002. In order for Hunter to prevail on his request for punitive damages, he must prove that Town & Country denied his uninsured motorist claim with the knowledge it had no legitimate basis for denying coverage. A jury may infer malice or oppressive conduct from such evidence. *Mangino, supra.*

The uninsured motorist clause appearing in one of Hunter's insurance policies states that Town & Country agrees "to pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, herein called 'bodily injury', sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile ..." This is substantially similar to the related provision in Hunter's other policy. Thus under Hunter's uninsured motorist coverage, he must have a good cause of action against the Bulmers before he can recover from Town & Country. From a cursory review of the evidence we find a conflict in the parties' recitations of fact, one version of which would negate Hunter's right to recover due to his contributory negligence. Town & Country's denial of Hunter's claim was not so ludicrous and outside the bounds of reason as to be tainted by fraud, oppression, bad faith, or gross negligence. *Nationwide Mutual Insurance Co. v. Neville,* (1982) Ind.App., 434 N.E.2d 585, 595.

We do not find evidence to support Hunter's claim that Town & Country's investigation of the accident was insufficient simply because it does not bear out his version of the events. The facts that Town & Country did not discover Sadie's death until two weeks after the accident and initially assured Hunter that he was covered, are attributable to mere human error and do not infer bad faith. *See Travelers Indemnity, supra.* Nor were Town & Country's payments to the Bulmers' attorney evidence of fraud or misrepresentation/warranting punitive damages. Testimony revealed the Bulmers' attorney was paid to act as co-defense counsel with Town & Country's attorney during the trial. Such an arrangement was advantageous to Town & Country due to the attorney's familiarity with the case and cannot be said to have been made in bad faith since an insurance company stands in the position of the uninsured motorist in such litigation.

That Town & Country set up reserve accounts in Hunter's name evidences its good faith; that should it be found to have a duty to pay Hunter's uninsured motorist claims it was prepared to do so. We find no evidence of bad faith, fraud, oppression or grossly negligent behavior on the part of Town & Country to justify the jury's award of punitive damages and thus it is reversed.

II. *Excessive Compensatory Damages.*

The awards of compensatory damages to Hunter as administrator of Sadie's estate and for his own injuries are inconsistent and cannot stand. As against the Bulmers, the jury assessed $4,000 for Sadie's wrongful death and $6,000 for Hunter's personal damages, and $30,000 and $10,000 against Town & Country on the above respective claims. The jury may not conclude Hunter is entitled to one amount from the Bulmers but shall recover a much

larger sum through his uninsured motorist coverage from Town & Country.

The purpose of uninsured motorist insurance is to put the injured insured party in substantially the same position as if the offending party had complied with the minimum requirements of the Financial Responsibility Act. *Capps v. Klebs*, (1978) 178 Ind.App. 293, 382 N.E.2d 947. Hunter may only recover from Town & Country that amount for which the jury has determined the Bulmers are liable, up to the limits provided for in Hunter's insurance policies. Hunter cannot, as he asserts he has done, independently seek compensatory damages from Town & Country because of its alleged bad faith in handling his claim.

Hunter's complaint alleged hospital and burial expenses for Sadie in the amount of $3956.33. The jury's award of $4,000 against the Bulmers appears to have been intended to cover these costs. Hunter testified regarding $6,554.14 worth of personal medical bills. As he had already received over $8,000 from Town & Country before the trial, the jury's award of $6,000 against the Bulmers cannot be said to be totally improper to cover his injuries. Thus, pursuant to *Burnett v. State*, (1984) Ind., 467 N.E.2d 664 [1], the jury's awards of $4,000 and $6,000, as compensatory damages assessed against the Bulmers, stand. The $30,000 and $10,000 awards assessed against Town & Country are reversed and Town & Country is obligated to pay only $10,000 as the total amount of damages awarded to Hunter against the Bulmers.

III. *Contributory Negligence.*

Town & Country argues Hunter is entitled to no compensatory damages because he was contributorily negligent in attempting to pass the Bulmers' automobile on the right. IND. CODE 9–4–1–67 prohibits a vehicle from passing another vehicle, which is traveling in the same direction, on the right side absent certain conditions. Violation of this statute raises a presumption of negligence which the of-

fender must then rebut. *See Reuille v. Bowers*, (1980) Ind.App., 409 N.E.2d 1144. Thus, Hunter had the burden of proving he was justified in attempting to pass the Bulmers' automobile on the right because he did what any reasonable person, who desired to comply with the statute, would have done under the same circumstances. *See Davison v. Williams*, 251 Ind. 448, 242 N.E.2d 101.

Hunter could be found not guilty of contributory negligence if the evidence showed noncompliance with IND. CODE 9–4–1–67 was excusable due to circumstances resulting from causes beyond his control and in no way produced by his own negligence, or his conduct came within a specified exception found in the statute. *Davison, supra.* IND. CODE 9–4–1–67(a)(1) states one may pass on the right if the vehicle to be overtaken is making or about to make a left turn. Hunter testified to his belief that Mrs. Bulmer, after driving left of the center line, was preparing to turn left across the northbound lane of Highway 121. Hunter otherwise spoke of Mrs. Bulmer's erratic driving and his fear that this driver was "out to get him". The trial court instructed the jury on IND. CODE 9–4–1–67 and that its violation was prima facie evidence of negligence. It was within the province of the jury to believe Hunter's testimony and accordingly find he was justified in attempting to pass the Bulmer vehicle on the right and was not contributorily negligent. *See McCall v. Sisson*, (1975) 166 Ind.App. 403, 336 N.E.2d 660. We will neither reweigh the evidence nor judge the credibility of the witnesses. The jury's finding that Hunter is entitled to recover from the Bulmers, and thus was not contributorily negligent, must stand.

IV. *Town & Country's Instruction No. 7.*

Town & Country's request that the trial court give its tendered Instruction No. 7 was denied. This instruction reads:

1. The court affirmed the trial court, reversing the Court of Appeals where the widow of a decedent, age 52, with a life expectancy of 23.24 years, earning $27,151 per year, for whom medical and burial expenses were insured in the amount of $4262, was awarded $6000.

"You are instructed that under the terms of the insurance policies, issued by Town & Country Mutual Insurance Company to Dale Hunter, the borrowed motorcycle which Dale Hunter was operating at the time of the accident was not covered by the said policies for liability coverage. The company, therefore, had no obligation to file an SR–21 for Dale Hunter with the Indiana Bureau of Motor Vehicles."

Town & Country asserts the above instruction would have informed the jury as to its interpretation of Hunter's liability coverage. However, such was not an issue, as Hunter's claim dealt strictly with his uninsured motorist coverage. If the instruction was to protect Town & Country from punitive damages by showing the company acted properly in relation to filing an SR–21 form, its omission is harmless error as we have found the awards of punitive damages must be reversed. Refusal to give Instruction No. 7 does not warrant a new trial in this case.

### V. *Hunter's Instruction No. 17.*

The trial court gave Hunter's tendered Instruction No. 17 which states:

"Contributory negligence is not a defense if you find that the defendant, Carol Bulmer, acted in a wilful or intentional manner with reckless disregard for the safety of the plaintiff, Dale Hunter."

Town & Country argues there was insufficient evidence of wanton and willful misconduct on Mrs. Bulmer's part to instruct the jury on that issue. We disagree. From Hunter's description of Mrs. Bulmer's inconsistent driving pattern and her manner of passing their motorcycle, the jury could infer that she was operating the car with reckless disregard for Hunter's and Sadie's safety. Mrs. Bulmer's testimony denying she even knew the motorcycle was behind her does not erase Hunter's testimony but is only evidence to be counter-weighed by the jury. *Cf. Andis v. Newlin,* (1982) Ind., 442 N.E.2d 1106. Hunter's Instruction No. 17 is a correct statement of the law and he has a right to have an instruction based on his theory of the case

submitted to the jury as it was an issue covered by the evidence. *See Lawson v. Webster,* (1962) 133 Ind.App. 296, 181 N.E.2d 870; *Lavengood v. Lavengood,* (1947) 225 Ind. 206, 73 N.E.2d 685. The trial court did not err in giving Hunter's tendered Instruction No. 17.

For all of the above stated reasons, the judgment of the trial court granting Hunter punitive damages against Town & Country totalling $85,000 is reversed. The award of compensatory damages to be paid by Town & Country is reduced and limited to that amount which was assessed against the Bulmers, the total of which is $10,000. The amounts assessed against Town & Country on the jury verdict forms; $10,000 for Hunter's injuries and $30,000 for Sadie's wrongful death, are reversed. This cause is remanded to the trial court for action consistent with this opinion.

Judgment affirmed in part, reversed in part.

ROBERTSON, J., and RATLIFF, P.J., concur.