ALLSTATE INDEMNITY COMPANY,
Appellant–Defendant,

v.

Lee O. BROWN, Jr., Appellee–Plaintiff.

No. 49A04–9710–CV–452.

Court of Appeals of Indiana.

June 30, 1998.

John W. Hammel, Yarling, Robinson, Hammel & Lamb, Indianapolis, for Appellant–Defendant.

William A. Waddick, The Waddick Law Firm, P.C., Indianapolis, for Appellee–Plaintiff.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

In July of 1995, Lee O. Brown filed his Complaint for Damages against Charles Figures, an uninsured motorist, and Allstate Indemnity Company ("Allstate"), Brown's insurer. The complaint was subsequently amended. Allstate filed answers to both the original and amended complaint. In December of 1996, the trial court entered a default judgment on the issue of liability against Figures and, after a hearing on damages, entered a money judgment against Figures in the amount of $34,875.00. At that hearing,

counsel for Allstate appeared briefly and asserted that the company could not be collaterally estopped by any judgment entered against Figures. Next, Brown filed his Motion for Summary Judgment against Allstate. After a hearing, the court granted Brown's motion. Allstate now appeals. The sole issue presented for our review is whether the trial court erred when it entered summary judgment against Allstate.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On December 31, 1994, Figures' vehicle struck Brown's vehicle in the rear while Brown was stopped at a traffic light. Brown sustained injuries from the collision. At the time of the accident, Figures was uninsured, while Brown had insurance coverage through Allstate. Brown's policy included an Uninsured Motorists Insurance Coverage provision ("uninsured motorist provision") with policy limits of $25,000.00 per person and $50,000.00 per accident. That provision provides in relevant part:

Part III

Uninsured Motorists Insurance—Coverage SS

If a limit of liability is shown on your declarations page for Coverage SS, we will pay all damages that an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of:

1. bodily injury sustained by an insured person, and

2. property damage. Property damage is covered only if a separate limit is shown on the declarations page for Uninsured Motorists Insurance—Property Damage. We will not pay for property damage caused by an underinsured motor vehicle.

The bodily injury and property damage must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto. We will not pay any punitive or exemplary damages.

If an insured person sues a person believed responsible for the accident without our written consent, we aren't bound by any resulting judgment.

As a result of the accident, Brown filed a complaint for damages in which he named both Figures and Allstate as defendants. Specifically, Count I of the original complaint alleged that Figures' negligent operation of his vehicle caused Brown's injuries. Count I also sought a judgment against Allstate for any damages awarded against Figures.

In February of 1996, Brown's counsel wrote Allstate a letter in which he explained Brown's injuries and enumerated his medical expenses. Under the uninsured motorist provision of the insurance policy, Brown made demand upon Allstate to pay Brown a sum of either $60,593.00 or the policy limit in order to settle the claim. Allstate declined. Brown then filed an amended complaint and added Count II, which alleged that Allstate had breached the terms of the insurance contract, Count III, which alleged that Allstate had acted in bad faith and sought punitive damages, and Count IV, which alleged that Allstate's actions were fraudulent. Allstate answered and pled affirmative defenses.

Brown then filed a Verified Application for Default Judgment against Figures. The following day, the court entered a default judgment against Figures on the issue of liability and set a hearing on the issue of damages. At the hearing, counsel for Allstate appeared and argued that Allstate could not be bound by any award of damages assessed against Figures. Allstate's counsel then left the hearing, and the court heard evidence. In January of 1997, the trial court entered a judgment for damages against Figures in the amount of $34,875.00.

Brown then filed a motion for summary judgment and designation of evidence. On that same day, Brown also filed a Motion for Filing Discovery, in which he moved the court to order Allstate to file its original Answers to Brown's Interrogatories. Pursuant to Brown's motion, the court ordered Allstate to produce its original answers. Brown, in turn, relied on those answers to support his motion for summary judgment. Specifically, Brown designated Allstate's answers to Interrogatory No. 7 and Interrogatory No. 10, in which Allstate admitted that Brown's accident was covered under the

uninsured motorist provision and that the only dispute between Allstate and Brown involved a good faith disagreement on the amount of damages. Thus, Brown claimed in his motion for summary judgment that Allstate should be bound by the default judgment against Figures. In response, Allstate agreed that there were no genuine issues of material fact but maintained that Brown was not entitled to judgment as a matter of law. The trial court granted Brown's motion for summary judgment. Allstate now appeals.

## DISCUSSION AND DECISION

### Standard of Review

■ When reviewing a summary judgment decision, an appellate court applies the same standard as does the trial court. *USA Life One Ins. Co. of Indiana v. Nuckolls,* 682 N.E.2d 534, 537 (Ind.1997). Summary judgment is warranted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Trotter v. Nelson,* 684 N.E.2d 1150, 1152 (Ind. 1997). Just as the trial court, we may only consider those parts of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and other matters which have been designated by the parties to the trial court for consideration. *Id.* We do not weigh the evidence presented by the parties. Rather, we consider the evidence designated by the parties in the light most favorable to the non-moving party. *USA Life,* 682 N.E.2d at 534.

■ The trial court entered specific findings of fact and conclusions thereon. However, our standard of review is unchanged by the entry of such findings and conclusions. *Chicago Southshore & South Bend R.R. v. Itel Rail Corp.,* 658 N.E.2d 624, 629 (Ind.Ct. App.1995). Specific findings and conclusions are not required in the summary judgment context, and although they offer valuable insight into the trial court's rationale for its judgment and facilitate our review, they are

not binding on this court. *Trout v. Buie,* 653 N.E.2d 1002, 1005 (Ind.Ct.App.1995), *trans. denied.*

### Brown's Motion for Summary Judgment

As noted above, Brown argued in his motion for summary judgment that Allstate should be bound by the default judgment against Figures because it failed to participate in the determination of fault and damages as alleged in Count I and, thus, that he was entitled to summary judgment as a matter of law. In response, Allstate asserts that it cannot be bound by the judgment against Figures, relying on footnote four in *Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515, 523, n. 4 (Ind.1993), and, thus, contends that Brown is not entitled to judgment as a matter of law.[1]

### Judgment as a Matter of Law

Allstate presents multiple arguments in support of its contention that the trial court erred when it determined that Brown was entitled to judgment as a matter of law. First, Allstate maintains that the court erred when it dismissed footnote four in *Erie Ins. Co. v. Hickman by Smith,* as *dicta.* Second, Allstate argues that it could not have defended Figures during the default judgment proceedings because of conflicts of interest. Third, Allstate asserts that the court erred when it determined that the "consent to sue" provision in Brown's insurance policy was void as against public policy. We address each argument in turn.

#### 1. Applicability of Footnote

Allstate directs us to a footnote in the Indiana Supreme Court case of *Erie Ins. Co. v. Hickman by Smith, Id.,* to support its argument that it cannot be bound by the default judgment entered against Figures and that it should be able to relitigate the issues of liability and damages. In response, Brown argues that this case is not governed by *Erie,* but by *Indiana Ins. Co. v. Noble,* 148 Ind.App. 297, 265 N.E.2d 419 (1970), and its progeny. Brown asserts that because he chose to sue both Figures and Allstate within

1. Allstate further argues that summary judgment is inappropriate because material facts are in dispute regarding liability as between Brown and Figures. However, because the dispositive issue

before us does not involve the underlying facts regarding Brown's liability to Figures, if any, we need not address Allstate's contention.

the same action, Allstate, which had notice and an opportunity to participate in the proceedings, is bound by the judgments entered against Figures on the issues of liability and damages. We agree with Brown.

In *Erie*, our supreme court addressed whether there was sufficient evidence to support the jury's award of punitive damages. 622 N.E.2d at 521. In that case, Hickman, who had been driving a vehicle owned by Smith, collided with Davis, an uninsured motorist. Smith's vehicle was insured by a policy issued by Erie Insurance Company, which provided only liability and uninsured motorist coverage. Smith sued both Erie and Davis in the same action. Specifically, Counts I and II sought recovery against Davis for personal injuries and property damage. Count III alleged that Erie had breached its contract of insurance by failing to pay under the uninsured motorist provision, and Count IV alleged that Erie had acted in bad faith and requested punitive damages. *Id.* at 522.

In its discussion of the trial between Smith and Erie, the court stated in a footnote that although a default judgment had been entered against Davis, that judgment could not have been used to collaterally estop Erie from litigating the percentages of fault for purposes of the uninsured motorist claim. *Id.* at 523, n. 4. Accordingly, both Erie and Smith had presented evidence regarding fault at trial. *Id.* Allstate argues that *Erie* is analogous to the present case and, thus, that the trial court erred when it determined that Allstate was precluded from litigating the issues of liability and damages.

As an initial matter, we do not believe that our supreme court decides important questions of law in footnotes. In any event, *Erie* is distinguishable. In *Erie*, the plaintiff's allegations against the insurer involved only a breach of contract and a bad faith claim. In addition, the insurer was defending a breach of contract claim in which the issue of comparative fault between the uninsured motorist and the plaintiff was dispositive. Here, however, Count I of Brown's complaint requires both Allstate and Figures to participate in a single determination of both liability and damages. Further, Allstate received no-

tice that Brown had filed his verified application for default judgment against Figures, Allstate was informed of the date of the hearing on damages against Figures, and its counsel actually appeared at the outset of that hearing. We conclude that because Brown's complaint joined both the uninsured motorist and Allstate within one claim on the issues of liability and damages, the comment in footnote four in *Erie* does not apply.

We agree with Brown that this case is governed by the rule of law established in *Indiana Ins. Co. v. Noble*, 148 Ind.App. 297, 265 N.E.2d 419 (1970). In *Noble*, this court stated that an insured who has a claim against an uninsured motorist has four options available to her: (1) the insured may file an action against the insurance company without joining the uninsured motorist, (2) the insured may file an action joining both the uninsured motorist and the insurance company as party defendants and litigate all of the issues of liability and damages in one action, (3) the insured may file an action against the uninsured motorist alone and give adequate notice to the insurance company so that it may take appropriate action, including intervention, and (4) the insured may file an action against the uninsured motorist and give no notice to the insurance company. *Id.* at 318–319, 265 N.E.2d at 432–33. The court went on to hold that "[t]here can be no question that under options one and two the insurance company is bound by the determination of the issues of liability and damages after all appellate remedies are exhausted." *Id.* at 319, 265 N.E.2d at 433.

Since *Noble*, Indiana courts have held that it is "axiomatic" that action taken by an insured under options one and two will bind the insurance company. *Vernon Fire & Cas. Ins. Co. v. Matney*, 170 Ind.App. 45, 49, 351 N.E.2d 60, 63 (1976); *Stewart v. Walker*, 597 N.E.2d 368, 371 (Ind.Ct.App.1992). In *Matney*, we held that in order to have a full and complete adjudication of all the issues in a single trial, an insurer has the right to intervene in an action where the insured sues only the uninsured motorist. *Matney*, 170 Ind. App. at 49, 351 N.E.2d at 64. The *Matney* court also concluded that when the insurer receives sufficient notice of the action be-

tween the insured and the uninsured motorist and chooses not to intervene, the resulting judgment is binding upon the insurer in a subsequent action with its insured. *Matney*, 170 Ind.App. at 55, 351 N.E.2d at 67.

■ We can discern no meaningful distinction between the insurer who elects not to intervene after being given adequate notice of a claim and the insurer who is joined as a defendant with the uninsured motorist but fails to present a defense. Under either scenario, the interests in judicial economy and the avoidance of multiple lawsuits require the insurer to litigate those issues of which it has received adequate notice when those issues are before the court. *See Matney*, 170 Ind.App. at 50, 351 N.E.2d at 64 ("[T]o allow either an insured or an insurer to await the outcome of an action against an uninsured motorist by the insured, and then determine their position on the binding effect of the first action, leads directly to a second and unnecessary litigation of the same issues.").

Here, Brown chose option number two and joined both Figures and Allstate as defendants in his action. Allstate received notice of both the application for default judgment against Figures and the hearing on damages but failed to participate in either proceeding. Therefore, we conclude that under the rule established in *Noble*, Allstate may not relitigate the issue of fault or damages and is liable to Brown for the amount of damages entered against Figures.[2]

### 2. Conflict of Interest

Next, Allstate claims that it cannot be bound by the judgment against Figures be-

cause it had no contractual authority to defend Figures during the default judgment proceedings and that to have done so would have presented conflicts of interest. We do not agree.

In both *Matney*, 170 Ind.App. at 52, 351 N.E.2d at 65, and *Westfield Ins. Co. v. Axsom*, 684 N.E.2d 241, 244 (Ind.Ct.App.1997), this court recognized that a conflict of interest is unavoidable in an action by an insured against an insurer who is defending either an uninsured or underinsured motorist. Despite that conflict of interest, we have concluded that the inherent conflict is not sufficient to outweigh the interest in avoiding multiple litigation and the possibility of conflicting results. *Matney*, 170 Ind.App. at 52, 351 N.E.2d at 65.

Still, Allstate contends that, given the posture of this case, additional conflicts, not present in either *Matney* or *Westfield*, exist between Allstate and Figures. Specifically, Allstate argues that "the insurer's defense of the uninsured motorist interferes with the uninsured motorist's own defense against the insured's claims" and, further, that "a conflict arises from the insurer's acquisition of confidential information about the uninsured motorist's assets ... that the insurer could later use against the uninsured motorist to collect on its subrogation claim." We are not persuaded by Allstate's argument. First, these conflicts would be present in any situation where an insured files an action against both her insurer and the uninsured motorist. In addition, the court in *Matney* clearly stated that even "heightened" conflicts of interest "must be tolerated." *Matney*, 170 Ind.App. at 52, 351 N.E.2d at 65.[3] Therefore, we

---

**2.** We disagree with the trial court's conclusion that Allstate was "collaterally estopped" by the default judgment entered against Figures. Clearly, not all of the requirements for collateral estoppel were present in this case, i.e., subsequent law suit, privity, final judgment on the merits. *See Hayworth v. Schilli Leasing, Inc.*, 669 N.E.2d 165, 167 (Ind.1996) (collateral estoppel operates to bar a subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in the subsequent lawsuit). Notwithstanding that erroneous designation, we agree with the court's conclusion that "overall fairness and whether the parties had notice and opportunity to be heard" are the dispositive fac-

tors in this case. Here, as in *Noble*, those factors serve as the functional equivalent of collateral estoppel.

**3.** In *Matney*, the court examined a hypothetical situation in which both parties to a law suit are insured by the same insurance carrier. The court stated that although this situation alone creates a conflict, the conflict would be "heightened" if the defendant filed a counterclaim, which would place the insurer in a position that would require it to defend both sides. Further, the insurer's interests would be at odds with both of the insureds. Notwithstanding, the court concluded that even "this conflict of interest is un-

reject Allstate's argument that it cannot be bound by the judgment against Figures because of the potential conflicts of interest had it participated in the default proceedings.

### 3. Consent to Sue Provision

Finally, Allstate challenges the trial court's determination that the "consent to sue" clause [4] in Brown's insurance policy was void as against public policy. Allstate argues that the clause is valid and contractually bars Brown from arguing that the default judgment against Figures is binding on Allstate. In response, Brown maintains that pursuant to its interrogatory responses, Allstate has waived the argument that Brown has not complied with any policy provision.

As discussed above, we are not bound by the trial court's findings and conclusions thereon. *Smith*, 682 N.E.2d at 571. Rather, we may affirm the trial court's grant of summary judgment on any legal theory supported by the evidence. *Stewart*, 597 N.E.2d at 370–71.

In *Noble*, this court stated:

> An insurance policy is not an ordinary contract. It is a complex instrument, unilaterally prepared and seldom understood by the insured. The parties are not similarly situated. The company and its representatives are experts in the field; the insured is not.... For this reason we do not hesitate to place the burden of affirmative action upon the insurance company.

*Noble*, 148 Ind.App. at 323, 265 N.E.2d at 435 (quoting *Allstate Ins. Co. v. Pietrosh*, 85 Nev. 310, 454 P.2d 106 (1969)). Here, when Allstate filed its answer and amended answer, it raised no defense or allegation that Brown had failed to comply with the terms of the insurance policy. In addition, Brown tendered Interrogatory No. 10, which asked whether Allstate claimed that Brown had failed in any way to meet his obligations under the policy. In response, Allstate stated:

[Allstate] has not denied that plaintiff is covered by the uninsured motorist provision of [Brown's] insurance policy with [Allstate]. The dispute involved in this litigation involves a good faith disagreement about the amount of plaintiff's claim.

In addition, when asked in Interrogatory No. 7 why it had denied Brown coverage under the uninsured motorist provision of the policy, Allstate responded that it had not denied coverage or benefits and that the only disagreement involved the amount of a "valid claim." Despite Allstate's attempt to invoke the "consent to sue" clause for the first time on appeal, we conclude that Allstate has waived the argument that Brown failed to comply with the provisions of the policy. The "burden of affirmative action" is placed upon the insurer, and Allstate failed to meet that burden when its answers to Brown's complaints and its responses to interrogatories gave Brown no reason to believe that he had failed to comply with the policy terms. *See Noble*, 148 Ind.App. at 323, 265 N.E.2d at 435.

### CONCLUSION

We conclude that the material facts are not in dispute and that Brown is entitled to judgment as a matter of law. We conclude further that Allstate is bound by the default judgment on the issue of liability and the judgment for damages entered against Figures. Thus, the trial court did not err when it granted Brown's motion for summary judgment.

Affirmed.

BAKER and RILEY, JJ., concur.

---

avoidable and must be tolerated." *Matney*, 170 Ind.App. at 52, 351 N.E.2d at 65.

4. The "consent to sue" clause at issue provides, "If an insured person sues a person believed responsible for the accident without our written consent, we aren't bound by any resulting judgment."