Melinda **WINEINGER**, Appellant–
Plaintiff,

v.

Shane **ELLIS** and Shelter Mutual
Insurance Company, Appellees–
Defendants.

No. 36A04–0510–CV–587.

Court of Appeals of Indiana.

Oct. 23, 2006.

J. Kevin King, Peter Campbell King, Cline, King & King, Columbus, IN, Attorneys for Appellant.

Roger K. Kanne, Jennifer A. Strickland–Padgett, Zeigler Cohen & Koch, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

Appellant-plaintiff Melinda Wineinger essentially appeals from two orders entered by Insurance Company (Shelter) and an order granting a post-judgment set-off to Shelter based upon the amount it had paid for Wineinger's medical expenses. In particular, Wineinger argues that the trial court erred in: (1) refusing to allow Shelter, a real party in interest, to be referred to before the jury; (2) using jury verdict forms and instructions that omitted any mention of Shelter; (3) permitting Shelter's attorneys to step into the shoes of uninsured motorist appellee-defendant Shane Ellis and defend against Wineinger's action; and (4) awarding Shelter a setoff because Shelter had represented to the trial court that it would pay any judgment and because the trial court should have applied Indiana's subrogation statute. Finding that the trial court properly concluded that requiring Shelter to be a nominal participant in the trial would have impermissibly confused the issues and finding no other error, we affirm the judgment of the trial court.

### FACTS

On April 30, 1999, Wineinger was a passenger in a vehicle that was rear-ended in Seymour by a vehicle driven by Ellis. Ellis was an uninsured motorist. The driver of the vehicle in which Wineinger was traveling was insured by Shelter. Pursuant to that insurance policy, Wineinger was insured by Shelter at the time of the collision.

As a result of the accident, Wineinger sustained a number of injuries, including neck pain and chronic headaches. She ultimately accrued medical expenses totaling $3,000.37. Of those expenses, Shelter

paid $2,232 on Wineinger's behalf pursuant to the medical payments coverage provisions of the insurance policy.

On April 20, 2001, Wineinger filed a complaint against Ellis and Shelter, alleging that she sustained injuries as a result of Ellis's negligence and statutory violations and that Wineinger was covered under the Shelter insurance policy at issue, pursuant to which she had performed all conditions necessary to recover.[1]

On January 7, 2004, Shelter filed a motion to substitute Ellis, in name only, as the proper party defendant, essentially requesting that no references to Shelter or insurance be made at trial and that Shelter be permitted to proceed at trial in Ellis's name only. Shelter admitted liability and represented that it would pay any judgment rendered against Ellis. Thus, the only issues remaining to be resolved at trial were the nature and extent of Wineinger's bodily injuries and damages caused by the collision. The trial court granted Shelter's motion on January 23, 2004, ordering that at the trial, "all representations to the jury, including oral or verbal form, shall represent the party defendant to be Shane Ellis. Any verdict awarded against the uninsured motorist, Shane Ellis, should be made against Shelter Mutual Insurance Company as real party defendant, following all proper set offs." Appellant's App. p. 306.

On February 3, 2004, Wineinger objected to Shelter's motion, arguing that she should be allowed to refer to Shelter in front of the jury. She also filed a motion to reconsider the trial court's January 23 order. On February 4, 2004, Shelter amended its answer and admitted liability with regard to the collision. That same day, the trial court granted Wineinger's

motion to reconsider and revoked its order of January 23. On April 13, 2004, the trial court entered the following order: "The Court having reconsidered its ruling of January 23, 2004, the Petitioner's objections and the Defendant's reply, now affirms its order of January 23, 2004." *Id.* at 8.

On August 16, 2004, Shelter's attorneys filed appearances on behalf of Ellis and Shelter. At a final pretrial conference on July 20, 2004, the trial court affirmed that Shelter would be allowed to step into Ellis's shoes and defend the action without reference to insurance coverage, including the name "Shelter," provided that Shelter admitted liability and agreed to pay the full judgment, even if such judgment exceeded the uninsured policy limits.

The jury trial took place from July 25 through July 27, 2005. At the trial's conclusion, the jury found in favor of Wineinger and awarded damages totaling $25,000. On August 11, 2005, Shelter filed a motion for setoff for the medical payments it had made on Wineinger's behalf. On August 24, 2005, the trial court granted Shelter's motion. Following an evidentiary hearing to determine the amount of setoff to which Shelter was entitled, on September 8, 2005, the trial court entered an order finding that Shelter was entitled to a setoff in the amount of $2,232 and ordered that the judgment be reduced accordingly from $25,000 to $22,768. Wineinger now appeals.

## DISCUSSION AND DECISION

### I. Shelter's Role at Trial

Wineinger argues that the trial court erred in defining Shelter's role at trial.

---

1. Wineinger and her husband also brought a loss of consortium claim against the defendants. They voluntarily dismissed that claim prior to trial, however, and the trial proceeded with Wineinger as the only plaintiff.

Specifically, she contends that the trial court erred in refusing to permit her to refer to Shelter and any insurance coverage issues before the jury, in using jury instructions and verdict forms that omitted any mention of Shelter, and in permitting Shelter's attorneys to step into Ellis's shoes and defend the action.

*A. References to Shelter During Trial*

 As we consider the trial court's pretrial ruling to exclude all references to insurance and to Shelter during the trial, we observe that whether to admit or exclude evidence is a decision that rests within the sound discretion of the trial court. *Laudig v. Marion County Bd. of Voters Registration,* 585 N.E.2d 700, 708 (Ind.Ct. App.1992). Additionally, rulings concerning the relevancy of evidence are largely within the trial court's discretion and we will not disturb such rulings unless they are clearly erroneous. *Id.* Thus, we will not disturb rulings regarding the admissibility or relevance of evidence unless the decision was against the logic and effect of the facts and circumstances before the court. *Id.* at 709.

 Wineinger argues that she is permitted to sue her insurance carrier and that, in disallowing references to be made to insurance or Shelter during the trial, the trial court impermissibly removed a proper party defendant from the equation. She directs us to *Indiana Insurance Company v. Noble,* in which a panel of this court held that an insured has a number of options in litigation involving uninsured motorist insurance coverage:

1. [The insured] may file an action directly against his insurance company without joining the uninsured motorist as a party defendant....

2. [The insured] may file an action joining both the uninsured motorist and the insurance company as party defendants....

3. [The insured] may file an action against the uninsured motorist alone without joining the insurance company as a party defendant ... and give[ ] ... notice of the filing and pendency of such action to the insurance company....

4. [The insured] may file an action against the uninsured motorist and give no notice to the insurance company.

148 Ind.App. 297, 318–19, 265 N.E.2d 419, 432–33 (1970) (citations omitted).

Neither Shelter nor the trial court disagrees with the holding in *Noble.* The trial court did not dismiss Shelter as a party and it did not indicate to Wineinger that she was not permitted to file a lawsuit against Shelter. At issue here is whether it was proper to prohibit references to Shelter during trial, not whether it was proper to name Shelter as a defendant in the complaint.

To give proper consideration to the trial court's ruling, we must first untangle what claims were brought against what parties and what issues were left to be resolved at trial. Wineinger sued Ellis for, in essence, negligence and negligence per se. She also brought a claim against Shelter, which reads as follows:

3. Defendant Shelter issued a policy of insurance, Policy Number 13–1–4426718–1, which included uninsured/underinsurance [sic] motorist coverage that was in full force and effect on April 30, 1999.

4. Defendant Ellis may have been an uninsured motorist on April 30, 1999.

5. The negligence of the uninsured motorist was a proximate cause of the Plaintiffs' [sic] injuries.

6. The Plaintiff has performed all conditions necessary pursuant to the policy of uninsured/underinsurance [sic] motorist coverage issued by Defendant Shelter.

WHEREFORE, the Plaintiffs, by counsel, prays [sic] this Court for such damages as are reasonable under the premises, for costs, and all other just and proper relief under the premises.

Appellant's App. p. 280–81. Wineinger insists that her claim against Shelter sounds in breach of contract. Nowhere in the complaint, however, does she allege that Shelter actually breached the contract. Generally, an insured sues its insurance carrier for breach of contract when the insurer has denied a claim. Here, however, Wineinger did not allege that she made a claim for coverage that Shelter denied prior to the time she filed the instant lawsuit. It is not immediately apparent, therefore, precisely what cause of action Wineinger brought against Shelter.

For argument's sake, we will assume that Wineinger properly brought and pleaded a breach of contract claim against Shelter. Prior to trial, Shelter filed an amended answer to Wineinger's complaint in which it admitted liability under the insurance policy and represented that it would pay any judgment rendered by the jury. With respect to Shelter, therefore, the *only* remaining issue to be resolved at trial was the amount of damages to which Wineinger was entitled.

■ In a breach of contract action, the measure of damages is limited to those actually suffered by the plaintiff, who is not entitled to be placed in a better position than she would have been had the breach not occurred. *Allstate Ins. Co. v. Hammond*, 759 N.E.2d 1162, 1166–67 (Ind. Ct.App.2001). Thus, a plaintiff suing her insurer for breach of contract based upon denial of a claim is entitled to what she would have received had the insurer paid her claim as requested.

■ Here, the insurance policy at issue provides, in relevant part, as follows:

We will pay damages for bodily injury which an insured or the insured's legal representative is legally entitled to recover from the owner or operator of an uninsured motor vehicle or an underinsured motor vehicle.

* * *

LIMITS OF LIABILITY

* * *

(3) Any amount payable under the terms of this Coverage will be reduced by any amount paid or payable for the same damages to or for the insured,

 (a) by or for any person or organization who is or may be held legally liable for the bodily injury to the insured....

* * *

(5) The maximum amount payable for bodily injury under uninsured or underinsured motorist coverage is the lesser of:

 (a) the difference between the amount paid in damages to the insured by or for any person or organization who may be liable for the insured's bodily injury and the per person limit of uninsured and underinsured motorist coverage provided in the insured's policy; or

 (b) the difference between the total amount of damages incurred by the insured and the amount paid by or for any person or organization liable for the insured's bodily injury.

Appellant's App. p. 425–26. Under any set of circumstances, therefore, Wineinger is not entitled to recover more damages than the amount she is entitled to receive from Ellis. Contrary to Wineinger's assertion that she is entitled to recover against Ellis for negligence and against Shelter for breach of contract, the insurance policy makes clear that any amount for which it is liable is reduced by damages paid by Ellis. Thus, even if the trial court had permitted references to Shelter and Ellis as party defendants during the trial, Wineinger would not have been entitled to receive more than the damages assessed against Ellis.

Our analysis is informed by *Town & Country Mutual Insurance Co. v. Hunter*, in which the plaintiff brought an action for damages stemming from a vehicle collision against the uninsured motorists and his insurance company. 472 N.E.2d 1265 (Ind.Ct.App.1985). The jury assessed damages against the uninsured motorists in the amount of $10,000 and against the insurer in the amount of $40,000. On appeal, we noted the inconsistency in the two awards and held that the

> jury may not conclude [the insured] is entitled to one amount from the [uninsured motorists] but shall recover a much larger sum through his uninsured motorist coverage from [the insurer].... [The insurer] is obligated to pay only $10,000 as the total amount of damages awarded to [the insured] against the [uninsured motorists].

*Id.* at 1269–70. We also emphasized that an insured may only recover from its insurer that amount for which the jury has determined the uninsured motorist is liable, up to the policy limits, and may not independently seek compensatory damages from the insurer. *Id.* at 1270.

Here, Shelter admitted liability under the insurance policy prior to trial. Conse-quently, the only remaining issues were the nature and extent of Wineinger's injuries and damages. Under no event is Wineinger entitled to receive more than she is entitled to recover from Ellis. The jury calculated Ellis's liability to be $25,000, and Shelter's nominal presence at the trial would not, and should not, have affected that figure. Wineinger was properly afforded the opportunity to be in the same position as if Ellis had carried his own insurance. *See Town & Country*, 472 N.E.2d at 1270 ("[t]he purpose of uninsured motorist insurance is to put the injured insured party in substantially the same position as if the offending party had complied with the minimum requirements of the Financial Responsibility Act"). Consequently, the trial court properly ordered that no references to insurance or Shelter be made at trial. Along these same lines, we conclude that the trial court properly used jury instructions and verdict forms that omitted any mention of Shelter.

### B. Relationship Between Shelter and Ellis

Wineinger next argues that the trial court improperly permitted Shelter to step into Ellis's shoes and provide a defense on damages. Specifically, she contends that no attorney-client relationship was formed between Shelter's attorneys and Ellis and that Shelter had an impermissible conflict of interest.

Initially, we observe that Wineinger does not have standing to allege that an attorney-client relationship did not exist between Shelter's attorneys and Ellis. She has established neither a personal stake in the relationship nor a direct injury that she sustained as a result of that relationship. *See Villegas v. Silverman*, 832 N.E.2d 598, 604 (Ind.Ct.App.2005) (discussing standing in a different context), *trans. dismissed.* Moreover, Shelter is not contending that it actually represented

Ellis; rather, it merely stepped into his shoes to provide a defense on damages at trial. Indeed, Shelter did not at any time indicate to the jury that it represented Ellis. As agreed upon prior to trial, Shelter's attorneys stated only that they represented the "Defense."

■■■■ A judgment obtained by an insured against an uninsured motorist is binding upon the insurer on both liability and damages if the insurer has been given notice of the underlying litigation. *Allstate Indem. Co. v. Brown*, 696 N.E.2d 92, 95 (Ind.Ct.App.1998). As such, the insurer has the right to defend the action—and to intervene if it was not named as a defendant—against the insured. *Id.* In the context of an uninsured motorist coverage claim, the insurer stands in the position of the uninsured motorist during litigation. *Town & Country*, 472 N.E.2d at 1269.

Here, because Ellis was an uninsured motorist and Wineinger was covered under the insurance policy at issue, Shelter was liable to pay any judgment rendered at trial. Thus, Shelter had a right to step into Ellis's shoes and defend the action.[2]

■■■ As to whether Shelter had an impermissible conflict of interest, we note that we have recognized that a conflict of interest is unavoidable in an action by an insured against an uninsured motorist and the insurer providing uninsured motorist coverage. *Allstate Indem. Co.*, 696 N.E.2d at 95. But we have also concluded that the inherent conflict is outweighed by "the interest in avoiding multiple litigation and the possibility of conflicting results." *Id.*

We see nothing improper in the trial court's decision to allow Shelter's attorneys to step into Ellis's shoes and defend the action at trial. After Shelter assumed that role, it voluntarily dismissed all cross-claims that it had asserted against Ellis

and also agreed to pay the full judgment rendered at trial, which provided Ellis with complete financial protection. Thus, Shelter successfully avoided an impermissible conflict of interest and merely sought to defend against claims for which it would ultimately be held liable. The trial court properly permitted Shelter to do so.

### II. Medical Payments

Finally, Wineinger argues that the trial court improperly ordered a setoff of the damages award based upon the medical payments that Shelter had made on Wineinger's behalf. Inasmuch as there is no dispute regarding the salient facts, we must determine whether the trial court properly granted the setoff as a matter of law. We apply a de novo standard of review to questions of law. *Dawson v. Estate of Ott*, 796 N.E.2d 1190, 1195 (Ind. Ct.App.2003).

### A. Judicial Estoppel

■■■■ Wineinger first contends that Shelter is judicially estopped from seeking a setoff because it had represented to the trial court that it would pay any judgment in favor of Wineinger. Judicial estoppel "prevents a party from assuming a position in a legal proceeding inconsistent with one previously asserted when the court has acted on the admissions of the estopped party." *Am. United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 699 (Ind.Ct.App.2004), *trans. denied.* Here, Wineinger argues that Shelter is estopped from seeking a setoff because it represented to the trial court that it would pay "the entire amount of damages awarded in this case, if any, including any amount in excess of the policy limits of the applicable insurance policy in this case . . . ." Appellant's App. p. 328. The trial court relied upon that representation in prohibiting references to insur-

---

**2.** Apparently, Ellis has not, at any point, taken part in this litigation. Appellant's Br. p. 30.

ance and Shelter during the trial. *Id.* at 51, 52, 57–58. Therefore, Wineinger argues, Shelter was estopped from seeking a setoff following the jury verdict.

■ The insurance policy at issue herein provides that any payment of uninsured motorist coverage "will be reduced by any amount paid or payable for the same damages to or for the insured ... under Medical Payments Coverage." Appellant's App. p. 346. Wineinger acknowledges that Shelter made medical payments on her behalf. The policy unambiguously requires that the amount of uninsured motorist coverage owed to her by Shelter is reduced by the amount of those payments.

It is apparent that in requesting a contractual setoff, Shelter did not adopt a position that was inconsistent with its agreement to pay all damages. Indeed, in its order granting Shelter's motion to prohibit any mention of insurance or Shelter at trial, the trial court explicitly provided that "[a]ny verdict awarded against [Ellis] should be made against [Shelter] as real party defendant, *following all proper set offs.*" Appellant's App. p. 306 (emphasis added). Thus, although the trial court acted upon Shelter's representation that it would pay any judgment, the court also acknowledged that the judgment would be reduced—pursuant to the terms of the policy—by proper setoffs. Moreover, Wineinger *has* received the full judgment awarded by the jury—$2,232 prior to trial in the form of medical payments and $22,768 following trial, which covers the balance of the verdict.

Additionally, we observe that Wineinger presented evidence of her medical expenses to the jury without acknowledging that Shelter had paid a significant portion of those expenses. Thus, to deny a setoff would be to permit Wineinger to receive a double recovery of her medical expenses.[3] We conclude, therefore, that the trial court properly granted a setoff to Shelter.

### B. Subrogation Statute

■ Wineinger also argues that even if the setoff was proper, the trial court should have applied the subrogation statute, meaning that Shelter is required to pay, out of the setoff, its pro rata share of the reasonable costs of Wineinger's claim against Ellis. *See* Ind.Code § 34–53–1–2. This statute "applies to an insurer claiming subrogation or reimbursement rights to the proceeds of a settlement or judgment resulting from a legal proceeding commenced by an insured against a third party legally responsible for personal injury for which payment is made by the insurer." I.C. § 34–53–1–1.

We have previously described the legislative intent behind the subrogation statute:

It is clear from the language of these statutory provisions that the General Assembly sought to ensure that insurance companies were subrogated from the proceeds of personal injury actions even when the insured, and not the insurer, sought recovery from the tortfea-

---

**3.** Although Wineinger contends that Shelter has waived this argument for failure to raise it before the trial court, Shelter clearly noted in its reply brief on its motion for setoff that Wineinger had presented evidence of her medical expenses to the jury without acknowledging that the insurer had paid a portion of those expenses. Appellant's App. p. 452. Furthermore, Shelter cited to a case upholding a setoff for insurer-paid medical expenses, and in upholding that setoff, this court clearly stated that an insured may not retain a double recovery by recovering "the same damages under both the uninsured motorist coverage of the policy and the medical payments coverage." *Standard Mut. Ins. Co. v. Pleasants,* 627 N.E.2d 1327, 1329 (Ind.Ct. App.1994). Thus, Shelter has not waived this argument.

sor. To do so prevents double recovery by insureds who are paid by third party tortfeasors after the insurance company has paid the insured's medical expenses. However, *in order to avoid a windfall to insurance companies who are subrogated by proceeds that they took no part in procuring from the tortfeasor*, the General Assembly required insurers to pay a pro rata share of the insured's attorney fees incurred in gaining the settlement or judgment.

*Allstate Ins. Co. v. Smith*, 656 N.E.2d 1156, 1159 (Ind.Ct.App.1995) (emphasis added). Thus, the subrogation statute is intended to prevent an insurer from being unjustly enriched. Our Supreme Court has elaborated on the type of situation that the statute is intended to address:

> This statute also is designed to address the normal situation where the plaintiff's insurer has medical payments coverage and the defendant's insurer has liability coverage. When the plaintiff recovers a judgment for both medical expenses and other damages, the plaintiff's insurer, who has already paid for medical expenses, is entitled to recover that amount as a subrogee, but also should bear its share of the cost of recovering those expenses from the defendant.

*Crabtree ex rel. Kemp v. Estate of Crabtree*, 837 N.E.2d 135, 140–41 (Ind.2005). More specifically, the *Crabtree* court concluded that "[w]e do not believe the legislature intended the Subrogation Statute to compel an insurer to pay attorney's fees *to recover the amount of its medical payments from itself.*" *Id.* at 142.

Here, Shelter was responsible for Wineinger's medical payments and liability coverage. Wineinger did not recover from Ellis, the third-party tortfeasor, or from his insurer; rather, she recovered from her own insurer, Shelter. And what Wineinger asks is precisely what our Supreme

Court concluded the subrogation statute is not intended to do—to require an insurer to pay an insured's litigation costs to recover its medical payments *from itself.* Under these circumstances, therefore, we conclude that the trial court properly declined to apply the subrogation statute.

■ We also observe that Wineinger is correct to argue that the advance payment statute, Ind.Code § 34–44–2–3, does not apply herein because there is more than one defendant. I.C. § 34–44–2–1(b). Thus, Shelter's right to reduce the amount of the judgment to the extent of the medical payments it made on Wineinger's behalf is purely contractual. As noted above, the language of the insurance policy is clear and unambiguous—any payment of uninsured motorist coverage "will be reduced by any amount paid or payable for the same damages to or for the insured ... under Medical Payments Coverage." Appellant's App. p. 346. It is apparent, therefore, that the trial court properly granted the requested setoff to Shelter and properly refused to require Shelter to pay a pro rata share of Wineinger's litigation costs out of the setoff amount pursuant to the subrogation statute.

The judgment of the trial court is affirmed.

VAIDIK, J., and CRONE, J., concur.